ELECTRO-TECH, INC v H F CAMPBELL COMPANY

Docket No. 81866. Argued October 6, 1988 (Calendar No. 10). Decided
August 1, 1989.

Electro-Tech, Inc., brought an action under 42 USC 1983 in the
Wayne Circuit Court against H. F. Campbell Company and the
City of Westland, alleging that the city took its property
without just compensation and without due process of law
contrary to the Fifth and Fourteenth Amendments by wrong-
fully refusing to issue a building permit. The court, William J.
Giovan, J., entered judgment on a jury verdict for the plaintiff.
The Court of Appeals, CYNAR, P.J., and WEAVER and M. H.
CHERRY, JJ., reversed in an opinion per curiam, holding that
the trial court erred in permitting the plaintiff to proceed to
trial under § 1983 and that the plaintiff was required first to
seek review of the city's decision under state law (Docket No.
86471). The plaintiff appeals.

In an opinion by Chief Justice RILEY, joined by Justices
BOYLE, ARCHER, and GRIFFIN, the Supreme Court *held:*

Before proceeding under 42 USC 1983, a property owner
must obtain a final decision from the governmental entity
alleged to have unconstitutionally taken the property and also
attempt to obtain just compensation through inverse condem-
nation. In this case, because the conditional approval of the
plaintiff's site plan was not a final disposition of the matter,
the plaintiff's claim under § 1983 was not ripe for adjudication.

1. 42 USC 1983 provides a civil remedy for the deprivation of
constitutional rights by persons acting under color of state law.
In this case, because the city did not make a final determina-
tion regarding the disposition of the plaintiff's property, the
question whether the plaintiff has established an unconstitu-
tional taking need not be decided. The claim was not ripe for
review.

2. Exhaustion of state administrative remedies is not a
prerequisite to bringing an action under 42 USC 1983. The

REFERENCES
Am Jur 2d, Eminent Domain §§ 375 *et seq.*
See the Index to Annotations under Exhaustion of Remedies; In-
verse Condemnation.

question whether administrative remedies must be exhausted is conceptually distinct from the question whether an administrative action must be final before it is judicially reviewable. The finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. In this case, although the plaintiff was not required to appeal the council's initial site-plan decision to the zoning board of appeals, it was required to obtain a final decision from the city before bringing an action under § 1983. In light of the circumstances surrounding the conditional approval of the plaintiff's site plan, the plaintiff had not completed the available procedures to render the matter finally resolved. A similarly situated plaintiff would be required to obtain a final decision from the administrative body which allegedly unconstitutionally took its property.

3. Under Michigan law, a landowner whose property has been taken for public use without the commencement of formal condemnation proceedings, or who alleges that the effect of a governmental regulation, although not involving a physical taking, prevents the use of much of the property for any profitable purpose, may institute an action for inverse condemnation to obtain just compensation. In this case, it appears that the plaintiff attempted to pursue such an action and that the trial court improperly disposed of the claim on governmental immunity grounds. However, because the plaintiff had not obtained a final decision from the city, its § 1983 action was not ripe for adjudication.

Affirmed.

Justice BRICKLEY, joined by Justices LEVIN and CAVANAGH, dissenting, stated that Electro-Tech was deprived of a property interest without due process when the City of Westland arbitrarily and capriciously required Electro-Tech to cede a portion of its property to the city without compensation as a condition of obtaining a building permit.

The majority seriously misconstrues recent United States Supreme Court precedent in concluding that Electro-Tech's claim is not ripe for adjudication for want of a final decision, by treating Electro-Tech's right to improve its property as a government benefit, and by concluding that Electro-Tech did not identify a protected property interest because of failure to demonstrate a legitimate claim of entitlement.

Unlike a regulatory taking due process claim, Electro-Tech's

substantive due process claim does not require proof that the application of a regulation to its property caused an interference with the use of property so drastic as to amount to a taking. Electro-Tech's substantive due process claim requires proof only that it was deprived of a constitutionally protected property interest as a result of its refusal to submit to the unconstitutional condition arbitrarily and deliberately imposed by the city council. The United States Supreme Court finality requirement, however, need be applied only when a claim alleges a regulatory taking of property and therefore is not applicable in this case. Furthermore, even where the finality requirement is implicated, it need not be satisfied when attempts to do so would be futile. The majority's finding that Electro-Tech's claim fails because of a supposed failure to satisfy the finality requirement imposes an unjustifiably high burden of proof on the issue of causation and mandates exercises in futility.

Electro-Tech's right to improve its property subject to legitimate permitting requirements was a property interest protected by the Due Process Clause of the Fourteenth Amendment which was violated by the city's illegitimate imposition of the dedication condition. The right to build on one's own property is not to be treated as a government benefit. On the basis of United States Supreme Court case law, a government benefit analysis, which requires proof of a legitimate claim of entitlement, is not justified.

The practical effect of the finality and entitlement analyses endorsed by the majority is to reward obdurate action on the part of a governmental agency aiming to obfuscate or delay permit applications of those, like Electro-Tech, to whom the agency had no intention of granting a building permit under lawful conditions. The majority thus imposes upon the plaintiff the burden of engaging in impractical maneuvers in distant anticipation of litigation which are entirely inconsistent with intelligent business operations and common sense.

The City of Westland did not offer any justification for its demand that Electro-Tech surrender its land to the city without compensation, and the city has admitted on appeal that the imposition of this permit condition was wrongful. On the basis of recent precedent from the United States Supreme Court, this condition violated the Fifth Amendment of the United States Constitution. The city arbitrarily forced Electro-Tech to choose between two constitutionally protected rights. Electro-Tech was compelled to yield either its Fifth Amendment right to be compensated for the taking of its property or its independent

property interest in improving its land. Electro-Tech's refusal to allow the violation of the former right caused the deprivation of the latter. The city's action violated Electro-Tech's rights to substantive due process.

The decision of the Court of Appeals should be reversed and the case remanded to that Court for further proceedings, including consideration of the adequacy of Electro-Tech's proof of damages.

161 Mich App 622; 411 NW2d 800 (1987) affirmed.

CONSTITUTIONAL LAW — JUST COMPENSATION — EXHAUSTION OF STATE REMEDIES.

Before proceeding under 42 USC 1983, a property owner must obtain a final decision from the governmental entity alleged to have unconstitutionally taken the property and also attempt to obtain just compensation through inverse condemnation.

*Jackson & Laska, P.C.* (by *Wilson M. Jackson* and *George Laska*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Owen J. Cummings* and *Gail P. Massad*), for the defendants.

RILEY, C.J. Plaintiff-appellant applied to the City of Westland for permission to construct a manufacturing plant on its property. In exchange for site-plan approval and a subsequent building permit, the city council demanded the dedication of a strip of land adjacent to Newburgh Road for an unrelated road-widening project. Although the plaintiff repeatedly requested that the council remove the restriction, it did not appeal the council's decision to a higher city authority. Nor did the plaintiff attempt to have the restriction lifted by way of a circuit court injunction or declaration.

At a council meeting on June 11, 1979, the council approved the plaintiff's site plan subject to five stated conditions, one being the dedication of land. The plaintiff refused to give away its property and submitted no revised site plan. Thus, the

proposed building was never erected. However, the City of Westland, through formal condemnation proceedings, eventually acquired the strip of land abutting Newburgh Road.

Later, the plaintiff brought an action against the city under 42 USC 1983, alleging that the city "took" its property without just compensation and without due process of law in violation of the Fifth and Fourteenth Amendments. We are asked, in this case, to determine whether this property owner is entitled to recover damages under 42 USC 1983 for the alleged taking caused by the "wrongful" denial of a building permit. Accordingly, we must first determine the procedural prerequisites for such an action and whether this plaintiff has met them.

We hold that before proceeding under 42 USC 1983, a property owner must first obtain a final decision from the particular governmental entity that is alleged to have unconstitutionally taken his property and also attempt to obtain just compensation through inverse condemnation. In the instant case, because the conditional approval of the plaintiff's site plan was not the city's final disposition of the matter, we hold that the plaintiff's § 1983 claim was not ripe for adjudication. We need not reach, therefore, the question whether the council's actions actually constituted a "taking" within the meaning of the Fifth and Fourteenth Amendments. We affirm the decision of the Court of Appeals that the trial court erred in permitting the plaintiff to proceed to trial on its § 1983 claim.

## I. FACTS AND PROCEEDINGS

Plaintiff-appellant, Electro-Tech, Inc., manufactures electrical and electronic products. Much of

Electro-Tech's business involves contracts with the United States military. The company's manufacturing facility is located on Newburgh Road in the City of Westland.

Mr. Jack Beauchamp is the president and sole shareholder of Electro-Tech. In anticipation of securing additional contracts with the government and in order to more efficiently complete existing contracts, Mr. Beauchamp decided to build another manufacturing plant directly behind the existing facility. On October 26, 1978, Electro-Tech contracted with defendant, H. F. Campbell Company, to construct the new building. Pursuant to the agreement, Campbell was obligated to obtain a building permit and to complete construction by February 13, 1979.

On or about March 3, 1979, Mr. Beauchamp approved Campbell's site plan. However, before obtaining a building permit and actually beginning construction, Campbell was required to submit its plan for review by various city departments. The recommendations of these departments are then submitted to the planning commission for initial site-plan approval. The planning commission thereafter makes its recommendation to the city council for approval. After a site plan passes the council, the matter is finally submitted to the building department. The building department then examines the final site and building plans and, if approved, issues a building permit.[1]

On February 21, 1979, representatives of the various departments met to discuss Campbell's proposed site plan. At that meeting, the representatives compiled a list of thirteen items which were required to be included in the site plan before submission to the planning commission and

---

[1] These procedures were verified at trial through the testimony of various city employees.

city council. This list was forwarded by letter to Mr. Richard Wagner, the project director for Campbell. Although not included in the list, a recommendation was apparently made at this meeting to require, in exchange for site-plan approval and a subsequent building permit, the dedication of a twenty-seven-foot strip along the front of Electro-Tech's property for the widening of Newburgh Road.[2] The instant lawsuit concerns this dedication requirement.

On March 22, 1979, Mr. Wagner received a letter stating that the planning commission would recommend that the city council approve the site plan contingent upon, among other things, Electro-Tech's dedication of the strip adjacent to Newburgh Road. At trial, Mr. Beauchamp testified that, during the spring of 1979, he attended four or five council meetings protesting the city's demand.

Nonetheless, at a meeting on June 11, 1979, with Mr. Beauchamp in attendance, the city council approved the site plan, subject to five stated contingencies:

1) Loading area should be clearly designated as such by striping and signage.

2) A second access door in the new addition is required along the north side of the building for fire protection.

3) Fire and Engineering requirements must be met on final engineering and building plans.

4) *Dedication of 27 feet wide, approximately 210 feet in front of K2da for future Newburgh Road right-of-way.*

5) The front greenbelt area is to be graded and sodded. [Emphasis added.]

---

[2] According to the trial testimony, the dedication request was made in furtherance of the goals stated in the city's master plan. The plan, adopted in April of 1968, was still in effect at the time of trial.

Neither Campbell nor Electro-Tech attempted to appeal[3] the decision of the city council or to take the matter directly to the building department. It is also established that Electro-Tech did not attempt to have the dedication condition removed by way of a circuit court injunction or declaration.

Soon after the meeting of June 11, however, Campbell began making revisions to the site plan to comply with the requests of the city council. Plaintiff claims that all of the contingencies except for the dedication were met. However, evidence adduced at trial suggests that Campbell never submitted a final site plan to the council or to the building department (which is ultimately responsible for issuing the building permit) and was, in fact, still revising through September of 1979.

Because of its failure to procure site-plan approval and a subsequent building permit, Campbell could not proceed with the construction of Electro-Tech's new plant. Without the additional work space, Electro-Tech alleged it could not bid on several upcoming contracts and was forced to subcontract work on existing contracts in order to meet government deadlines.

On October 15, 1979, the City of Westland sent Electro-Tech a letter offering to purchase the strip of land abutting Newburgh Road. Mr. Beauchamp rejected the initial offer, maintaining that the proposed purchase price was too low. In January of 1980, the city filed a condemnation action in Wayne Circuit Court.[4]

On May 21, 1982, Electro-Tech brought this

---

[3] Mr. Beauchamp, however, testified that he had heard of the zoning board of appeals.

[4] On November 18, 1983, the court entered a consent judgment for the condemnation of the twenty-seven-foot parcel, awarding Electro-Tech $45,824.88, or four times the sum originally offered.

action against the City of Westland,[5] alleging that the city's "extortionary" demand and "wrongful" denial of the building permit violated both state and federal law. At the pretrial motions for summary disposition, the trial court dismissed Electro-Tech's state claims as being barred by governmental immunity.

On June 11, 1985, Electro-Tech proceeded to trial on its claim under 42 USC 1983. The jury returned a verdict in favor of Electro-Tech in the amount of $433,052. On July 9, 1985, the city moved for judgment notwithstanding the verdict, which was denied by order entered July 23, 1985.

The city appealed, raising four issues. Reaching only the first, the Court of Appeals reversed, holding that the trial court erred in permitting Electro-Tech to proceed to trial under 42 USC 1983.[6] Specifically, the Court of Appeals stated "that no violation of constitutional or federal law exists where plaintiff has merely been erroneously denied initial site approval and a building permit by a city council. Plaintiff must look for a review of that decision within the state." 161 Mich App 622, 629; 411 NW2d 800 (1987).

On March 22, 1988, we granted leave to appeal limited to the issue whether the plaintiff's judgment under 42 USC 1983 should be reinstated.[7]

## II. DISCUSSION

Section 1983[8] provides a civil remedy to persons

---

[5] The plaintiff also sued Campbell for breach of contract. This matter was settled prior to trial.

[6] *Electro-Tech, Inc v H F Campbell Co,* 161 Mich App 622; 411 NW2d 800 (1987).

[7] 430 Mich 858 (1988).

[8] Originally passed in 1871, the Civil Rights Act, 42 USC 1983 provides:

deprived of constitutional rights by individuals acting under color of state law. In *Parratt v Taylor,* 451 US 527; 101 S Ct 1908; 68 L Ed 2d 420 (1981), a state prison inmate lost a mail-order hobby kit, valued at $23.50, when a prison official negligently handled the prison mail. The inmate brought a § 1983 action, claiming a deprivation of his property without due process of law in violation of the Fourteenth Amendment.[9] In deciding the fate of the respondent's claim, the United States Supreme Court stated:

> [I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[9] The Due Process Clause of the Fourteenth Amendment embodies a dual function. Not only does it afford *procedural* safeguards to protected life, liberty, and property interests, but it also protects *substantive* aspects of those interests against impermissible governmental restrictions. *Hannah v Larche,* 363 US 420; 80 S Ct 1502; 4 L Ed 2d 1307 (1960), reh den 364 US 855 (1960) (procedural due process requires that a person who is allegedly being deprived of protected rights be given notice of the proceedings against him, an opportunity to defend himself, as well as the assurance that the matter will be conducted in a fair manner); *West Coast Hotel Co v Parrish,* 300 US 379; 57 S Ct 578; 81 L Ed 703 (1937) (substantive due process is the constitutional guarantee that state legislation will not work to deprive a person of life, liberty, or property for arbitrary reasons). See also 16A Am Jur 2d, Constitutional Law, §§ 403, 812-818, pp 124-128, 967-996.

In *Parratt,* the plaintiff claimed that the conduct of the prison guard violated his right to *procedural* due process.

conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. [451 US at 535. See also *Collier v City of Springdale,* 733 F2d 1311, 1313 (CA 8, 1984), cert den 469 US 857 (1984).]

As in *Parratt,* the Westland City Council here was undoubtedly acting in its official capacity and, therefore, "under color of state law." Our analysis, therefore, focuses, as it did in *Parratt,* on whether the plaintiff has been denied a right, privilege, or immunity secured by the United States Constitution.[10]

In its fourth amended complaint, upon which this case was tried, Electro-Tech alleged that the city council's refusal to approve its site plan and building permit violated its rights to just compensation[11] and due process[12] under the Fifth and Fourteenth Amendments. The Court of Appeals ruled that Electro-Tech could not maintain an action under § 1983, concluding that no constitutional violation exists "where plaintiff has merely been erroneously denied initial site approval and a

[10] In *Parratt,* the Court found that the inmate's deprivation did not violate the Due Process Clause. The deprivation did not result from an established state procedure; rather, it resulted from "a random and unauthorized act" of a state employee. 451 US 541. Accordingly, because it would be impossible to predict when such random deprivations would occur, the state could hardly be expected to provide a predeprivation hearing. The Court also found significant the fact that, although Nebraska provides a tort remedy for persons suffering damages at the hands of the state, the plaintiff failed to avail himself of that procedure. Thus, the Court concluded that he failed to state a claim for relief under § 1983.

[11] The Fifth Amendment of the United States Constitution provides, inter alia, that "private property [shall not] be taken for public use without just compensation." This prohibition has been incorporated to apply to the states through the Due Process Clause of the Fourteenth Amendment. See *Chicago, B & Q R Co v Chicago,* 166 US 226; 17 S Ct 581; 41 L Ed 979 (1897).

[12] The Due Process Clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law . . . ." For a discussion of the dual nature of the Due Process Clause, see n 9.

building permit by a city council. Plaintiff must look for a review of that decision within the state. It is a review of the city's decision and not tort remedies which we point out to plaintiff." 161 Mich App 629.

While we are in agreement with the result reached by the Court of Appeals, we believe that its analysis is flawed by the blurring of what we believe should be three distinct inquiries: the existence of a constitutional violation, exhaustion of state administrative remedies, and ripeness. The issue whether Electro-Tech was actually deprived of its property in violation of the Fifth and Fourteenth Amendments is distinct from the issues whether Electro-Tech was required to exhaust state administrative remedies before proceeding under § 1983 and whether the city's decision regarding Electro-Tech's property was final and, thus, judicially reviewable. We will, therefore, treat these inquiries separately.

### A. CONSTITUTIONAL VIOLATION

#### 1. REGULATORY TAKING

According to the Supreme Court of the United States, a taking may occur where a governmental entity exercises its power of eminent domain through formal condemnation proceedings, see, e.g., *Berman v Parker,* 348 US 26; 75 S Ct 98; 99 L Ed 27 (1954) (Fifth Amendment taking), or where a governmental entity exercises its police power through regulation which restricts the use of property, see *Pennsylvania Coal Co v Mahon,* 260 US 393, 415; 43 S Ct 158; 67 L Ed 322 (1922) (this claim may be framed as a Fifth Amendment taking or as a Fourteenth Amendment "due process" type taking). It is well established that land use regulation does not effect a taking if it "substan-

tially advance[s] legitimate state interests" and does not "den[y] an owner economically viable use of his land."[13] *Agins v Tiburon,* 447 US 255, 260; 100 S Ct 2138; 65 L Ed 2d 106 (1980). See also *Keystone Bituminous Coal Ass'n v DeBenedictis,* 480 US 470; 107 S Ct 1232; 94 L Ed 2d 472 (1987); *Penn Central Transportation Co v New York City,* 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978). Regulation that "goes too far . . . will be recognized as a taking." *Pennsylvania Coal, supra,* p 415.

The plaintiff in the instant case relies on two recent decisions of the United States Supreme Court to support its contention that the actions of the Westland City Council constituted a "taking" of property in violation of the Fifth and Fourteenth Amendments. In *First English Evangelical Lutheran Church of Glendale v Los Angeles Co,* 482 US 304; 107 S Ct 2378; 96 L Ed 2d 250 (1987), the Court held that where a land-use regulation effects a "taking" of all use of property, the Just Compensation Clause of the Fifth Amendment requires payment to the property owner even where the intrusion was only temporary.

The plaintiff, in *First English,* owned and operated a campground for handicapped children. In 1978, when a flood destroyed the facility and much of the surrounding area, Los Angeles County passed an interim ordinance prohibiting any reconstruction in the flood area. The church then brought an inverse condemnation suit in state court, claiming that the ordinance denied the plaintiff of all use of its property.

---

[13] It is also well established, however, that where governmental regulation results in a "permanent physical occupation" of property, a taking will be found *"without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." Loretto v Teleprompter Manhattan CATV Corp,* 458 US 419, 432, 434-435; 102 S Ct 3164; 73 L Ed 2d 868 (1982) (emphasis added).

The county moved successfully to strike the claim on the ground that the only relief available was a declaration that the ordinance was invalid or a writ of mandamus specifically permitting the proposed use of the land. *Agins v Tiburon,* 24 Cal 3d 266; 157 Cal Rptr 372; 598 P2d 25 (1979), aff'd on other grounds 447 US 255; 100 S Ct 2138; 65 L Ed 2d 106 (1980). The Supreme Court, however, recognizing the inherent unfairness of applying the *Agins* rule to the church's cause of action, held that "where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First English, supra,* p 321.[14]

Electro-Tech contends that *First English* is analogous to the instant case because the city council's imposition of the improper dedication requirement resulted in its temporary failure to obtain a building permit. Thus, like Los Angeles County's flood ordinance, Electro-Tech argues that the council's condition here "worked a taking of all use of [the plaintiff's] property" and that no "subsequent action" by the City of Westland, not even the eventual condemnation of the twenty-seven-foot parcel, "can relieve it of the duty to provide compensation

---

[14] The principle espoused by the Court in *First English* evolved from several prior cases holding that when the intentional acts of government destroy the use of private property and its entire value to the owner, the government has "taken" property without just compensation in violation of the Fifth and Fourteenth Amendments. See *Kaiser Aetna v United States,* 444 US 164; 100 S Ct 383; 62 L Ed 2d 332 (1979) (the government's attempt to create a public access to a privately owned pond amounted to a taking requiring just compensation); *United States v Dickinson,* 331 US 745; 67 S Ct 1382; 91 L Ed 1789 (1947) (the government's purposeful flooding of the plaintiff's land absent formal condemnation constituted a taking requiring just compensation); *United States v Causby,* 328 US 256; 66 S Ct 1062; 90 L Ed 1206 (1946) (the military use of an airport over the plaintiff's chicken farm imposed a servitude upon the land for which compensation was required).

for the period during which the taking was effective." *Id.*

Recognizing the similarities between *First English* and the instant case, it should be noted that the *First English* Court expressly declined to address "the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like . . . ." *Id.,* p 321.

Two weeks after *First English* was decided, the Court decided *Nollan v California Coastal Comm,* 483 US 825; 107 S Ct 3141; 97 L Ed 2d 677 (1987), a case factually similar to the one before us today. In *Nollan,* the coastal commission issued the plaintiffs a permit to rebuild their beach house upon the condition that they allow the public an easement across their beach. The plaintiffs sued the commission in state court on the ground that the condition constituted a taking.[15] The Supreme Court agreed, reasoning that the commission's imposition of the easement condition was not a valid land-use regulation since it did not serve public purposes related to the permit requirement. For example, although the state is authorized to pursue its comprehensive public-access program by exercising its eminent domain power and paying for such easements, it cannot compel coastal residents to give away their property in furtherance of that goal. In other words, "if [California] wants an easement across the [plaintiffs'] property, it must pay for it." *Id.,* p 842.

In Electro-Tech's view, *Nollan* is also dispositive of the constitutional issue before this Court today. According to the plaintiff, the dedication condition

[15] The Nollans filed a petition for a writ of mandamus in the superior court, arguing that imposition of the access condition violated the Taking Clause of the Fifth Amendment, as incorporated against the states by the Fourteenth Amendment. *Id.,* pp 828-829.

here, like the easement condition in *Nollan,* does not serve any public purpose related to the building permit requirement. Electro-Tech's plans to expand its manufacturing facility are in no way related to the city's plans to widen Newburgh Road. Thus, although Westland is authorized to pursue the goals set forth in its master plan, i.e., the expansion of Newburgh Road, it cannot, within the confines of the Fifth Amendment, compel nearby landowners to give away their property in realization of that goal.

On the basis of *First English* and *Nollan,* Electro-Tech argues that the City of Westland "took" its property in violation of the Fifth and Fourteenth Amendments. Accordingly, Electro-Tech contends that it has properly asserted a claim for damages against the city under § 1983.[16] The city, on the other hand, argues that there was no "taking" because it did in fact condemn and pay Electro-Tech for the twenty-seven-foot strip of land adjacent to Newburgh Road.

---

[16] It is significant that neither *First English* nor *Nollan* is a § 1983 case. Thus, neither case addressed the prerequisites for bringing such an action against a municipality. For example, in *Monell v Dep't of Social Services of the City of New York,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), the United States Supreme Court held that Congress intended to include

> municipalities and other local government units . . . among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional *implements or executes* a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. [*Id.* at 690. Emphasis added.]

Applying *Monell* to the instant case, it appears that Electro-Tech could have sued the City of Westland for "implementation or execution" of an unconstitutional regulation, though perhaps not for mere enactment of such a regulation. Here the city council's resolution, even if final as Justice BRICKLEY asserts, was never implemented or executed because the plaintiff never came back and satisfied the four valid requirements. See section II(C).

Having reviewed the record in this case, we find that the "taking" involved in the § 1983 action is different than the "taking" involved in the city's condemnation action. The subject of the § 1983 suit is the property upon which Electro-Tech intended to build, while the subject of the condemnation suit was the twenty-seven-foot parcel abutting Newburgh Road.

We agree, on the basis of *Nollan,* that had the city actually enforced the dedication requirement, a "permanent physical occupation" of Electro-Tech's land (i.e., the twenty-seven-foot parcel) would have resulted.[17] We note, however, that the city eventually paid Electro-Tech for this parcel of land. Similarly, in *Nollan,* a permanent physical invasion of the plaintiff's property (i.e., the land upon which the public easement was to be placed) did not occur because the commission's threatened action never came about. The *Nollan* Court simply held that the easement condition did not advance *any* legitimate state interest. *Id.,* p 841.[18]

[17] See *id.,* p 832 (discussion of the *Loretto* rule with respect to the easement condition: "We think a 'permanent physical occupation' has occurred, for purposes of that rule, where individuals are given a permanent and continuous right to pass to and fro . . .").

[18] The Supreme Court stated:

[O]ur cases describe the condition for abridgement of property rights through the police power as a "substantial advanc-[ing]" of a legitimate State interest. We are inclined to be particularly careful about the adjective where the actual conveyance of property is made a condition to the lifting of a land use restriction, since in that context there is heightened risk that the purpose is avoidance of the compensation requirement, rather than the stated police power objective.

We are left, then, with the Commission's justification for the access requirement . . . .

"The access required as a condition of this permit is part of a comprehensive program to provide continuous public access along Faria Beach as the lots undergo development or redevelopment."

That is simply an expression of the Commission's belief that

We acknowledge the obvious similarities between *Nollan* and the instant case.[19] *Nollan,* however, is procedurally distinguishable from the instant case because ripeness (finality) was never an issue there. Unlike the city council in the instant case, the commission in *Nollan* apparently placed only one condition, albeit improper,[20] on the issu-

> the public interest will be served by a continuous strip of publicly accessible beach along the coast. The Commission may well be right that it is a good idea, but that does not establish that the Nollans (and other coastal residents) alone can be compelled to contribute to its realization. Rather, California is free to advance its "comprehensive program," if it wishes, by using its power of eminent domain for this "public purpose," but if it wants an easement across the Nollans' property, it ·must pay for it. [*Id.,* pp 841-842. Citations omitted.]

[19] We also acknowledge the similarities between the instant case and *First English.* We point out, however, that although the Supreme Court in *First English* extended the regulatory taking doctrine to encompass actions seeking damages for a *temporary taking,* the Court expressly stated that a temporary taking is *not different in kind* from a permanent taking in that a landowner must be denied *all use* of his property. *First English, supra,* pp 318-320. In the instant case, although Electro-Tech was temporarily deprived of the opportunity to expand its manufacturing facility, it appears that the plaintiff still had an economically viable use for the property in its present condition.

[20] The *Nollan* Court stated that "unless the permit condition serves the same governmental purpose as the development ban, the building restriction is not a valid regulation of land use but an 'out-and-out plan of extortion.' " *Nollan, supra,* p 837 citing *JED Associates, Inc v Atkinson,* 121 NH 581, 584; 432 A2d 12 (1981), overruled on other grounds sub nom *Town of Auburn v McEvoy,* 131 NH 383; 553 A2d 317 (1988).

In *JED Associates,* the New Hampshire Supreme Court examined a zoning regulation which required all developers to dedicate a certain percentage of its land for playgrounds or other town uses as a condition to subdivision approval. The court found the regulation to be unconstitutional because it required developers "to pay for the privilege of using their land for valid and reasonable purposes *even though it satisfies all other requirements of the town's zoning and subdivision regulations." Id.,* p 584 (emphasis added).

*JED Associates* is distinguishable from the instant case. Unlike Electro-Tech, the developer in *JED Associates* had complied with all of the "reasonable" city requirements. *JED Associates, supra,* p 585. In the instant case, Electro-Tech did not remedy the four "valid" requirements, nor did it submit a final site or building plan. In our view, this matter was not finally resolved by the City of Westland.

ance of the building permit. Thus, the plaintiffs there had no further steps to go through before coming to court to contest the improper condition. In the instant case, the council had imposed, in addition to the improper dedication requirement, four "valid" conditions on the issuance of the permit. Because Electro-Tech failed to remedy these valid requirements or to submit a revised site plan evidencing compliance therewith, it was unclear whether or how much the improper condition interfered with the owner's investment-backed expectations. Electro-Tech's claim, therefore, was not ripe for review. See discussion of *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City,* 473 US 172; 105 S Ct 3108; 87 L Ed 2d 126 (1985), in section II(C).

Because we conclude in section II(C), that the City of Westland had not made a final determination regarding the disposition of Electro-Tech's property, we need not decide at this time whether Electro-Tech has established an unconstitutional taking.

### 2. SUBSTANTIVE DUE PROCESS

Justice BRICKLEY asserts that a property owner like Electro-Tech may "advance a [substantive] due process claim separate and distinct from the regulatory taking due process claim" discussed in this opinion. *Post,* p 94. Justice BRICKLEY contends that Electro-Tech has, in the instant case, established "arbitrar[y] and capricious[ ]" action on the part of the city council in imposing the dedication condition in violation of the Due Process Clause of the Fourteenth Amendment. *Id.,* p 92.

In support of these assertions, Justice BRICKLEY relies on *Nollan, supra,* and *Daniels v Williams,* 474 US 327, 337; 106 S Ct 662; 88 L Ed 2d 662

(1986). In our view, Justice BRICKLEY mistakenly relies upon *Daniels* to support the alleged constitutional violation in the instant case. In *Daniels,* the plaintiff, a state prison inmate, claimed that he was deprived of due process when he slipped and fell on a pillow left on the jail stairs by a prison guard. The Court held that the Due Process Clause is *not* implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property. *Id.,* p 328.

Unlike *Daniels,* the instant case involves a land use restriction. We recognize that at least two federal circuits have employed substantive due process in analyzing similar land use restrictions. See, e.g., *Bateson v Geisse,* 857 F2d 1300 (CA 9, 1988); *Bello v Walker,* 840 F2d 1124 (CA 3, 1988), cert den 488 US 868; 109 S Ct 176; 102 L Ed 2d 145 (1988). But see *Chiplin Enterprises, Inc v City of Lebanon,* 712 F2d 1524 (CA 1, 1983). We find it significant, however, that the Supreme Court has yet to employ such an approach in cases involving the wrongful denial of a land use permit. In *Nollan,* for example, the Supreme Court not only applied a traditional regulatory taking analysis, but it repeatedly referred to the case as one involving a taking.[21]

We are not suggesting, however, that Electro-Tech was foreclosed from asserting a substantive due process claim in the instant case. In fact, we

---

[21] In addition to "taking" claims, however, the Supreme Court has considered due process and equal protection challenges to governmental regulation of property. Despite the fact that the regulatory taking doctrine (regulation must "substantially advance legitimate state interests," *Pennsylvania Coal, supra*), and the substantive due process test (regulation must be "reasonably necessary" to serve legitimate state interest, *Goldblatt v Town of Hempstead,* 369 US 590, 595; 82 S Ct 987; 8 L Ed 2d 130 [1962]) seem almost analytically identical, the Court maintains that its "verbal formulations in the takings [sic] field have generally been quite different" from the standards applied to due process claims. *Id.,* p 848, n 3.

agree with Justice BRICKLEY that both the United States Supreme Court and this Court have acknowledged the possibility of substantive due process claims in response to governmental regulation of property. See, e.g., *Village of Euclid v Ambler Realty Co,* 272 US 365; 47 S Ct 114; 71 L Ed 303 (1926); *Goldblatt v Town of Hempstead,* 369 US 590; 82 S Ct 987; 8 L Ed 2d 130 (1962); *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974); *Cryderman v City of Birmingham,* 171 Mich App 15; 429 NW2d 625 (1988). Our review of the record here, however, indicates that this case was tried as a regulatory taking due process claim.

In part I of his opinion, Justice BRICKLEY himself acknowledges that a property owner may properly assert that a land use restriction " 'goes so far that it has the same effect as a taking by eminent domain [and] is an invalid exercise of the police power, violative of the Due Process Clause of the Fourteenth Amendment.' " *Post,* pp 93-94 citing *Williamson.* It is apparent in the instant case that Electro-Tech has asserted such a taking claim from the start. See plaintiff's fourth amended complaint and brief on appeal in this Court.

Furthermore, the plaintiff here clearly tried its case on a regulatory taking due process theory. The record reveals that the trial court instructed the jury on the *"deprivation* of property without due process of law." There was no instruction relating to *substantive* due process or to the "arbitrary" or "unreasonable" nature of the council's dedication requirement.[22]

---

[22] Justice BRICKLEY strains to explain why "[*Electro-Tech*] is a [substantive] due process case [and] *Nollan* was not." See *post,* p 126. We find it anomalous, therefore, that Justice BRICKLEY should rely on *Nollan* to support his conclusion that Electro-Tech's substantive due process rights were violated:

*Nollan* compels the conclusion that Electro-Tech's right to

improve its property subject to legitimate permitting require-
ments was violated by the city's admittedly illegitimate imposi-
tion of the dedication condition. The dispute between the
parties whether Electro-Tech actually complied with the four
remaining contingencies need not be resolved in light of *Nol-
lan*. [*Post*, pp 116-117.]

Justice BRICKLEY's substantive due process analysis is fatally flawed
because it fails to establish the existence of a constitutionally pro-
tected property or liberty interest. According to Justice BRICKLEY,
*Nollan* eliminates the need to establish whether Electro-Tech's "inter-
est should be treated as a property or liberty interest enjoyed . . . as
an incident of its ownership of the property, or as a government
privilege or benefit which did not rise to the level of a constitutionally
protected interest until such time as Electro-Tech's 'unilateral expec-
tation' of receiving the permit became a 'legitimate claim of entitle-
ment' to it." *Post*, p 116, quoting *Bd of Regents v Roth,* 408 US 564,
577; 92 S Ct 2701; 33 L Ed 2d 548 (1972).

Justice BRICKLEY correctly quotes the *Nollan* Court as stating that
"the right to build on one's own property—even though its exercise
can be subjected to legitimate permitting requirements—cannot re-
motely be described as a 'governmental benefit.'" *Id.,* p 833, n 2.
However, Justice BRICKLEY overlooks the fact that this statement was
not discussed in the context of substantive due process.

*Nollan* is a taking case. The Court made the above statement in
response to an argument, based on *Ruckelshaus v Monsanto Co,* 467
US 986; 104 S Ct 2862; 81 L Ed 2d 815 (1984), that because the
Nollans were *on notice* that the granting of a building permit would
be conditioned on the granting of the easement, they had no reason-
able "'expectation of being able to exclude members of the public'
from walking across their beach." *Nollan, supra,* p 833, n 2.

In *Monsanto,* which is also a taking case, the Court held that the
granting of an insecticide registration is a "valuable Government
benefit" which licenses the government to use and disclose trade
secrets in the registration application. The *Nollan* Court distinguished
*Monsanto,* stating simply that "the [commission's] announcement that
the application for (or granting of) the [building] permit will entail
the yielding of a property interest cannot be regarded as . . . the
voluntary 'exchange' . . . that we found to have occurred in *Mon-
santo." Id.,* p 833, n 2.

Justice BRICKLEY interprets footnote 2 of *Nollan* too broadly. He
would have us believe that *Nollan,* a taking case, renders the *Roth*
substantive due process "government benefit/entitlement" test unnec-
essary in the land use area. Unlike Justice BRICKLEY, we are not
"puzzl[ed]" that the post-*Nollan* due process cases (e.g., *RRI Realty
Corp v Village of Southampton,* 870 F2d 911 [CA 2, 1989]) do not
mention *Nollan. Post,* p 118. *Nollan* is a taking case.

Furthermore, even assuming the instant case was, as Justice BRICK-
LEY asserts, tried on a substantive due process theory and that *Nollan*
applies in this context, we would still find Electro-Tech's claim
premature for want of a final decision. *Herrington v Sonoma Co,* 834

As explained by Justice BRICKLEY, "[r]egardless of the manner in which a 'regulatory taking' claim is framed, whether as a violation of the Just Compensation Clause of the Fifth Amendment or of the Due Process Clause of the Fourteenth Amendment, the claim does not ripen until the landowner has received a final decision regarding the application of the regulation or ordinance to the particular piece of property. *Williamson, supra; MacDonald, Sommer & Frates v Yolo Co,* 477 US 340; 106 S Ct 2561; 91 L Ed 2d 285 (1986)." (*Post,* p 94.) Because the City of Westland did not have the opportunity to make a final decision regarding Electro-Tech's property, see section II(C), we hold that its claim was not ripe for judicial review.

### B

### EXHAUSTION OF STATE ADMINISTRATIVE REMEDIES

In *Patsy v Florida Bd of Regents,* 457 US 496, 550; 102 S Ct 2557; 73 L Ed 2d 172 (1982), the Supreme Court unequivocally stated that exhaustion of state administrative remedies is not a prerequisite to bringing an action under 42 USC 1983.[23] The plaintiff in *Patsy* filed a § 1983 action

F2d 1488 (CA 9, 1988). The *Nollan* Court stated that a person has a right to build on its land subject to *"legitimate permitting requirements."* The Court did not state that a person has an automatic right to or indisputable property interest in a building permit.

In *Nollan,* the plaintiffs were *entitled* to build on their land because they apparently had satisfied all the legitimate permitting requirements. There was only one condition imposed there and that condition was improper. Here, there were four valid conditions imposed which were never satisfied. Thus, Electro-Tech did not have a *legitimate claim of entitlement* to the building permit and, therefore, has not demonstrated a constitutionally protected property or liberty interest.

[23] It is also well established that a plaintiff need not exhaust state judicial remedies before proceeding to federal court with a § 1983 action. *Monroe v Pape,* 365 US 167, 183; 81 S Ct 473; 5 L Ed 2d 492 (1961), overruled on other grounds in *Monell, supra.*

in federal district court, alleging that her employer intentionally denied her employment opportunities solely on the basis of her race and sex. The employer successfully moved to dismiss because the plaintiff had not exhausted available administrative remedies. However, the Supreme Court, examining the legislative history of 42 USC 1983 and noting "the paramount role Congress has assigned to the federal courts to protect constitutional rights," decided not to overrule its prior decisions that exhaustion of state administrative remedies is not a prerequisite to a § 1983 action.[24]

Although *Patsy* unequivocally establishes that Electro-Tech was not required to exhaust available administrative remedies before bringing its § 1983 claim, other Supreme Court and lower federal court cases dealing specifically with regulatory taking have focused on the importance of obtaining a final decision from the governmental entity that is alleged to have acted unconstitutionally.

C

FINALITY

In *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City, supra,* 192-193, the Supreme Court stated:

> The question whether administrative remedies must be exhausted is conceptually

---

[24] See *McNeese v Cahokia, Illinois Bd of Ed,* 373 US 668, 671-673; 83 S Ct 1433; 10 L Ed 2d 622 (1963); *Barry v Barchi,* 443 US 55, 63, n 10; 99 S Ct 2642; 61 L Ed 2d 365 (1979); *Gibson v Berryhill,* 411 US 564, 574; 93 S Ct 1689; 36 L Ed 2d 488 (1973); *Carter v Stanton,* 405 US 669, 671; 92 S Ct 1232; 31 L Ed 2d 569 (1972); *Wilwording v Swenson,* 404 US 249, 251; 92 S Ct 407; 30 L Ed 2d 418 (1971); *Houghton v Shafer,* 392 US 639, 640; 88 S Ct 2119; 20 L Ed 2d 1319 (1968); *King v Smith,* 392 US 309, 312, n 4; 88 S Ct 2128; 20 L Ed 2d 1118 (1968); *Damico v California,* 389 US 416; 88 S Ct 526; 19 L Ed 2d 647 (1967).

distinct . . . from the question whether an admin-
istrative action must be final before it is judicially
reviewable. While the policies underlying the two
concepts often overlap, the finality requirement is
concerned with whether the *initial decisionmaker
has arrived at a definitive position on the issue*
that inflicts an actual, concrete injury; the exhaus-
tion requirement generally refers to administra-
tive and judicial procedures by which an injured
party may *seek review* of an adverse decision and
obtain a remedy if the decision is found to be
unlawful or otherwise inappropriate. [Citations
omitted; emphasis added.]

In *Williamson,* the plaintiff bank brought a
§ 1983 action against the county. The plaintiff
claimed, as Electro-Tech does in this case, that the
local government's temporary refusal to allow de-
velopment of its property constituted a compensa-
ble taking within the meaning of the Fifth Amend-
ment. The Supreme Court, however, did not reach
the merits of the plaintiff's constitutional claim
because it found the action unripe.

The *Williamson* Court set forth two finality
requirements which must be satisfied before a
plaintiff may bring an action under § 1983 for
damages resulting from an unconstitutional regu-
latory taking. First, the Court required that the
plaintiff obtain a *final decision* regarding the appli-
cation of the zoning ordinance and subdivision
regulations to its property. *Id.,* p 186, citing *Hodel
v Virginia Surface Mining & Reclamation Ass'n,
Inc,* 452 US 264; 101 S Ct 2352; 69 L Ed 2d 1
(1981).

According to *Williamson,* requiring a final deci-
sion from the appropriate administrative body
prior to initiating a § 1983 action "is compelled by
the very nature of the inquiry required by the Just
Compensation Clause." *Williamson, supra,* p 190.

Although "[t]he question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty," *Penn Central Transp Co v New York City*, 438 US 104, 123 [98 S Ct 2646; 57 L Ed 2d 631 (1978)], this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question. [*Id.*, pp 190-191. Citations omitted.][25]

In light of *Patsy*, the *Williamson* Court reasoned that although the plaintiff would not be required to appeal the planning commission's decision to the zoning board of appeals,[26] it would be required to seek variances which "would result in a conclusive determination by the Commission whether it would allow [the plaintiff] to develop the subdivision in the manner [originally] proposed." *Id.*, p 193 (emphasis added).

Applying these principles to the instant case,[27]

---

[25] In *Williamson*, the city planning commission had voiced eight objections when it initially rejected the plaintiff's preliminary plat. Because the plaintiff had failed to seek variances for each of the objections, the Court found its § 1983 claim unripe. "[U]ntil the Commission determines that no variances will be granted, it is impossible for the jury to find, on this record, whether [plaintiff] 'will be able to derive economic benefit' from the land." *Id.* at 191. In other words, "[a]bsent a final decision regarding the application of *all* eight of the commission's objections, it is impossible to tell whether the land retained any reasonable beneficial use or whether [plaintiff's] expectation interests had been destroyed." *Id.*, p 190, n 11.

[26] [R]espondent would not be required to appeal the Commission's rejection of the preliminary plat to the Board of Zoning Appeals, because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decision-making. [*Id.*, p 193.]

[27] Justice BRICKLEY criticizes the majority for applying the *William-*

we would hold that although Electro-Tech was not required to appeal the council's initial site-plan decision to the zoning board of appeals, the plaintiff was required to obtain a final decision from the city before bringing an action under 42 USC 1983.[28] In light of the circumstances surrounding

---

son finality requirements in the instant case. According to Justice BRICKLEY, "the finality requirement must be applied only when a landowner's claim alleges that a regulatory taking of the property has occurred." *Post,* pp 100-101. Justice BRICKLEY asserts that Electro-Tech has alleged a substantive due process claim rather than a regulatory taking claim and that *Williamson,* therefore, is inapplicable. *Post,* p 102.

We disagree with Justice BRICKLEY's characterization of the plaintiff's claim here. Electro-Tech has, in our view, asserted and tried a regulatory taking due process-type claim.

Justice BRICKLEY has, in our view, overlooked the obvious similarities between the instant case and *Williamson.* For example, each case involved a land use restriction whereby a local government imposed certain conditions on permission to build. Moreover, each case was brought pursuant to 42 USC 1983 and was tried as a regulatory taking action.

*Williamson* is clearly applicable in the instant case. Regardless of the manner in which a regulatory taking claim is framed, whether as a violation of the Just Compensation Clause of the Fifth Amendment or of the Due Process Clause of the Fourteenth Amendment (as in the instant case), *Williamson* instructs that the claim is not ripe until the property owner obtains a final decision regarding the application of the regulation to the property. *Id.,* pp 197-200.

[28] We acknowledge that *Williamson* involved a zoning ordinance while the case sub judice involves a city council resolution. We find, however, that this distinction does not render *Williamson* inapplicable here. In our view, the similarities between these two cases substantially outweigh their dissimilarities. For instance, both concern a local government's decision regarding a particular piece of property. Moreover, both cases involve the *process* through which a local body renders its final decision.

As in *Williamson,* we hold that a property owner need not resort to state "review procedures" (like appealing the council's decision to the board of zoning appeals or seeking mandamus) because such action would merely "result in a judgment whether the [council's] actions violated any of [the owner's] rights." *Williamson,* p 193. Instead we counsel the property owner to use the procedures available which might enable it to build according to the plans it had originally submitted for approval. In *Williamson,* that meant that the respondent should have sought variances regarding each of the eight objections. In the instant case, it meant that Electro-Tech should have at least submitted revised plans reflecting compliance with the four "valid" conditions. In this way, not only would the city be afforded

the "conditional approval" of Electro-Tech's site plan, we are persuaded that the plaintiff had not yet completed the available procedures which might have enabled it to build according to the plans it had originally submitted for approval.

At the June 11, 1979, city council meeting, the council had imposed, in addition to the dedication requirement, four conditions for obtaining final site-plan approval and a subsequent building permit.[29] Electro-Tech admits that none of the four additional conditions were objectionable, and, although it proceeded to remedy the deficiencies, it failed to submit a final site plan (either to the council or to the building department) reflecting at least those changes.[30]

The record further indicates that although all of the city departments participate in the decision-making process, the ultimate decision regarding building requests lies with the building department. As stated previously, the building department is responsible for examining the final site and building plans (as well as the final report from the engineering department) and, if everything is

the opportunity to reconsider the dedication requirement, but also, assuming the case went to trial, a factfinder would be able to determine whether Electro-Tech was deprived of its property *solely on the basis of the unlawful dedication requirement.*

[29] This number had been narrowed from the original thirteen recommended by the planning commission on February 21, 1979.

[30] The City of Westland has asserted all along that Electro-Tech simply decided to abandon its plans to build the new facility since the contractor, from the start, was already months behind schedule and since the chance to secure certain government contracts had already passed. The record reveals that the entire facility was to be completed by February 13, 1979. However, as of March of 1979, Campbell had not even submitted its proposed site plans to Mr. Beauchamp for approval. Further evidence that the plaintiff may have decided to abandon its plans is the fact that, as early as October of 1979 when the city first notified Electro-Tech of its intention to condemn the twenty-seven-foot parcel, the plaintiff was aware that the dedication requirement was no longer an obstacle and yet still failed to submit its final plans.

approved, for ultimately issuing the building permit.[31]

These facts, in our view, support the conclusion that the process for obtaining the city's permission to build had not yet been completed. The fact that the council's approval was "conditional" indicates that the entire matter had not yet been finally resolved and that Electro-Tech would have to submit an amended site plan before it could begin building. As indicated in *Williamson,* until all five of the council's objections, including the four "valid" conditions, are addressed and finally resolved (either by compliance or by refusal to comply), it is impossible to accurately determine the extent to which the plaintiff's land retained any reasonable beneficial use or the extent to which the plaintiff's expectation interest had been destroyed.[32]

---

[31] Justice BRICKLEY asserts that the building department does not make the ultimate decisions regarding building requests. *Post,* pp 107-109. However, testimony adduced at trial suggests unequivocally that building department approval is the final step in the process. Justice BRICKLEY himself states that the function of the building department is "*to determine whether the final plans conform* to the requirements of the building code and zoning ordinance with such modifications as may have been approved by the city council or board of zoning appeals." *Id.,* p 107 (emphasis added). In our view, Justice BRICKLEY inappropriately characterizes this function as "nondiscretionary and nondecisional." *Id.,* p 110.

While we agree that the building department had no authority to revise or override the June 11 council resolution, we disagree that no permit could issue unless Electro-Tech dedicated the twenty-seven-foot parcel. In our view, such a conclusion is premature at this stage.

By neglecting to submit an amended site plan reflecting compliance with the four "valid" conditions, the plaintiff not only precluded any chance of obtaining a building permit from the city (we can only speculate that the council would not have reconsidered the dedication requirement had Electro-Tech complied with the four "valid" conditions), but also made it impossible for a jury to determine whether a "taking" could have occurred as a result of the unlawful dedication requirement.

[32] The reason we would require Electro-Tech to address each condition imposed by the council is illustrated by the following scenario. Suppose Electro-Tech had refused to comply or was, in fact, unable to

We agree with Justice BRICKLEY that the building department has no authority "to override a condition imposed by the city council." *Post,* p 107. However, this fact does not obviate the need for obtaining a final decision from the city in this case. The fact that the building department cannot overrule the city council does not, as Justice BRICKLEY suggests, reduce the *Williamson* finality requirement to a mere exercise in futility.[33]

The Supreme Court's primary purpose in mandating a final decision from the appropriate administrative body was to establish the existence of a "taking" and the extent to which it has harmed the plaintiff. Thus, while a final decision by the

comply with one of the "valid" conditions imposed by the council. Under these circumstances, a question would arise regarding the extent to which the unlawful dedication requirement actually affected the plaintiff's "beneficial use" of the land. A similar question would also arise as to whether Electro-Tech's "expectation interest" was destroyed by the improper dedication requirement or by its own failure to meet one of the "valid" conditions. The requirement that the building department issue a final decision on each of the four "valid" conditions thus serves an indispensable function in this case.

[33] Like the plaintiff in *Williamson* who had asserted that the county's actions had deprived it of an economically viable use of its property, Electro-Tech has specifically asserted that it had been deprived of the right to use and derive income from its property. An examination of the record confirms that this was the precise theory upon which this case was tried. A significant portion of Electro-Tech's case in chief was devoted to estimating the amount of profit the company *could have realized* had it been able to build its new manufacturing facility.

In our view, determining the value of lost profits was purely speculative at that point in time. The City of Westland was entitled to impose the four valid conditions on the issuance of the building permit. Electro-Tech failed to submit any proof of compliance with those legitimate conditions. Thus, the city was under no obligation to issue Electro-Tech a building permit. Furthermore, it was questionable whether Electro-Tech could have erected the new building in time to bid on the contracts anyway. The building completion date had run by the time Electro-Tech had presented its first site plan to the city.

Because this case was submitted to the jury prematurely, it was impossible, as it was in *Williamson,* to *accurately* determine the extent to which the plaintiff's land retained any reasonable beneficial use or the extent to which its expectation interest had been destroyed.

building department in the instant case probably would not have resulted in approval of the site plan or the issuance of a building permit, it would have indeed resolved any issue regarding the four "valid" conditions and would have established a basis upon which a factfinder could conclude that "but for" the improper dedication requirement, Electro-Tech would have been able to "derive economic benefit" from its land. *Williamson, supra* at 191.[34]

In light of the record in the instant case as well as the purpose underlying the *Williamson* finality requirement, we reject the plaintiff's assertion that it would have been futile to submit an amended site plan to the building department.

The second finality requirement set forth by the *Williamson* Court is that a taking claim is not ripe until a plaintiff has sought compensation through state procedures. The Court reasoned:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking. . . . *Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.* [*Id.,* pp 194-195. Citations omitted; emphasis added.]

---

[34] Contrary to Justice BRICKLEY's assertion, we are not requiring Electro-Tech to "prove [to a] 'certainty' " that the city's dedication was the sole cause of its failure to receive a building permit. *Post,* p 112. We are simply mandating, in accordance with the requirements of *Williamson,* that the plaintiff obtain a final decision from the city regarding its property.

The Supreme Court reaffirmed its finality requirements in *MacDonald, Sommer & Frates v Yolo Co, supra.* Similarly, the lower federal courts have followed suit in requiring that a plaintiff first obtain a final decision from the governmental entity that is alleged to have taken property without just compensation and utilize the state procedures for obtaining just compensation before the plaintiff's § 1983 claim will be considered ripe for adjudication. *Bateson, supra; A A Profiles Inc v City of Ft Lauderdale,* 850 F2d 1483 (CA 11, 1988); *Austin v City & Co of Honolulu,* 840 F2d 678 (CA 9, 1988), cert den 488 US 852; 109 S Ct 136; 102 L Ed 2d 109 (1988); *Kinzli v City of Santa Cruz,* 818 F2d 1449, 1453-1455 (CA 9, 1987), cert den 484 US 1043; 108 S Ct 775; 98 L Ed 2d 861 (1988); *Ochoa Realty Corp v Faria,* 815 F2d 812, 816-817 (CA 1, 1987); *Norco Construction Inc v King Co,* 801 F2d 1143, 1145-1146 (CA 9, 1986); *Anthony v Franklin Co,* 799 F2d 681, 683-684 (CA 11, 1986); *Union Pacific R Co v Idaho,* 654 F Supp 1236, 1243-1244 (D Idaho, 1987); *Kaiser Development Co v City & Co of Honolulu,* 649 F Supp 926, 938-943 (D Hawaii, 1986); *Ross v City of Berkeley,* 655 F Supp 820, 840-842 (ND Cal, 1987); *JBK, Inc v Kansas City,* 641 F Supp 893, 908-909 (WD Mo, 1986).

Like the State of Tennessee in *Williamson,* the State of Michigan recognizes a cause of action for a de facto taking. Const 1963, art 10, § 2; *Hart v Detroit,* 416 Mich 488; 331 NW2d 438 (1982); *In re Urban Renewal, Elmwood Park Project,* 376 Mich 311; 136 NW2d 896 (1965); *Foster v Detroit,* 405 F2d 138 (CA 6, 1968); *In re Acquisition of Virginia Park,* 121 Mich App 153; 328 NW2d 602 (1982); *Detroit Bd of Ed v Clarke,* 89 Mich App 504; 280 NW2d 574 (1979).[35] An inverse or reverse condem-

---

[35] See, generally, Richardson, 1983 Annual Survey of Michigan

nation suit is one instituted by a landowner whose property has been taken for public use "without the commencement of condemnation proceedings." *Hart, supra,* p 494. Under Michigan law, a "taking" for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of any possession or use of the property. *Id.,* pp 501-502. When such a taking has occurred, the Michigan Constitution entitles the property owner to just compensation for the value of the property taken. *Id.,* p 494.

Further, Michigan law also recognizes a cause of action for inverse condemnation in cases, like this one, without a physical taking of property, where it is alleged that the effect of a governmental regulation is "to prevent the use of much of plaintiff's property . . . for any profitable purpose." *Grand Trunk W R Co v Detroit,* 326 Mich 387, 392-393; 40 NW2d 195 (1949). For example, in *Spanich v Livonia,* 355 Mich 252, 259-265; 94 NW2d 62 (1959), this Court acknowledged that the application of a zoning ordinance to a particular property can constitute an unconstitutional taking.

Generally, the remedy in such cases is a declaration that the regulation is unconstitutional and void. *Schwartz v City of Flint,* 426 Mich 295, 308; 395 NW2d 678 (1986); *Delta Charter Twp v Dinolfo,* 419 Mich 253, 268-269; 351 NW2d 831 (1984). Assuming, however, that the plaintiff shows by a preponderance of the evidence that a proposed specific use of the property is reasonable, the trial court may additionally declare the use to be reasonable and enjoin the municipality from interfering with that use. *Schwartz, supra,* pp 325-329.

Law, *Natural resources, real property and trusts,* 30 Wayne L R 763, 769-772 (1984); anno: *Plotting or planning in anticipation of improvement as taking or damaging of property affected,* 37 ALR3d 127, 163-167.

Although we found the notion "appealing," *Schwartz, supra,* p 324, this Court has yet to decide whether plaintiffs may also be *compensated* for temporary regulatory takings. Recently, however, in *Poirier v Grand Blanc Twp,* 167 Mich App 770, 774; 423 NW2d 351 (1988), the Court of Appeals adhered to the holding of the United States Supreme Court in *First English, supra,* stating:

> [It is well established] that regulation that goes too far will be recognized as a taking. Where government action works a taking, that necessarily implies the constitutional obligation to pay just compensation. That the regulation was an interim one or could be invalidated did not preclude an award for damages. The Court held that "'temporary' takings . . . are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *Where government activities effect a taking, the mere invalidation of the offending ordinance does not relieve the government of its duty to provide compensation for the period during which the taking was effective.* The Court did not distinguish between takings accomplished by the use of police power or by eminent domain. The key consideration was whether there had been a taking. [Citations omitted and emphasis added.][36]

Having examined the entire record in this case, we are persuaded that Electro-Tech attempted to pursue an inverse condemnation action in state court[37] and that the trial court improperly disposed

---

[36] See, generally, 27 Am Jur 2d, Eminent Domain, §§ 277, 288, 442, pp 66-67, 89-90, 356-357.

[37] Our review of the record indicates that counsel for the plaintiff went back and forth in deciding whether or not to pursue an inverse condemnation action. For example, on June 10, 1985, the first day of pretrial motions, plaintiff's counsel stated on two separate occasions: "We didn't plead a separate cause [of action] that we call inverse condemnation." However, the following day, counsel reversed his position, contending that "[i]nverse condemnation is in [the fourth

of this claim on governmental immunity grounds.[38]

In light of *both* finality requirements set forth in *Williamson,* however, we find that the plaintiff here has, at the most, satisfied only the second requirement. The fact that Electro-Tech was not permitted to pursue its inverse condemnation action does not obviate the fact that the plaintiff had not yet obtained a final decision from the City of Westland regarding its request to build. Accordingly, we hold that Electro-Tech has brought its § 1983 "taking" claim prematurely.

### III

In light of *Williamson* and its progeny, we are persuaded that Congress did not intend 42 USC 1983 to be an immediate tort recovery act for every person adversely affected by a local agency's initial zoning or building decision. In the instant case, because the conditional approval of the plaintiff's site plan was not the city's final disposition of the matter, we hold that the plaintiff's action under 42 USC 1983 was not ripe for adjudication. Accordingly, we affirm the decision of the Court of Appeals.

amended complaint] . . . [it] is the preventing of the use of a piece of property without paying anything for it." Additionally, in contesting the defendant's motion for directed verdict, plaintiff's counsel, for purposes of appeal, reiterated the theory of inverse condemnation. In view of the foregoing, we conclude that the plaintiff attempted to pursue its inverse condemnation action in state court.

[38] Since the obligation to pay just compensation arises under the constitution and not in tort, the immunity doctrine does not insulate the government from liability. *Tamulion v State Waterways Comm,* 50 Mich App 60, 67; 212 NW2d 828 (1973); see also *Sanfilippo v Santa Cruz Co,* 415 F Supp 1340, 1343 (ND Cal, 1976) (the doctrine of governmental immunity applies to tort actions and certainly would not apply to "actions brought under constitutional provisions guaranteeing just compensation for public takings of private property").

It should be noted, however, that the plaintiff did not raise this inverse condemnation issue in its application for leave to appeal in this Court. 430 Mich 858 (1988).

Boyle, Archer, and Griffin, JJ., concurred with Riley, C.J.

Brickley, J. (*dissenting*). Defendant City of Westland arbitrarily and capriciously required plaintiff Electro-Tech to cede a portion of its property to the city without compensation as a condition of obtaining a building permit. As a result, Electro-Tech was deprived of a property interest without due process.

In my opinion, the majority seriously misconstrues recent precedent from the United States Supreme Court. First, by concluding that Electro-Tech's claim is unripe for want of a "final decision" from the city regarding Electro-Tech's right to build on its property, the majority has unjustifiably expanded the ripeness requirements set forth in *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City,* 473 US 172, 190-191; 105 S Ct 3108; 87 L Ed 2d 126 (1985). Second, by treating Electro-Tech's right to improve its property as a government benefit and concluding that Electro-Tech has not identified a protected property interest because of its failure to demonstrate a "legitimate claim of entitlement," the majority has disregarded the teaching of *Nollan v California Coastal Comm,* 483 US 825, 833-834, n 2; 107 S Ct 3141; 97 L Ed 2d 677 (1987).

### I. INTRODUCTION

Regarding allegations of due process violations, Justice Stevens has aptly observed:

It is not enough to note that [the petitioners] rely on the Due Process Clause of the Fourteenth Amendment, for that Clause is the source of three different kinds of constitutional protection. First, it incorporates specific protections defined in the Bill

of Rights. . . . Second, it contains a substantive
component, sometimes referred to as "substantive
due process," which bars certain arbitrary govern-
ment actions "regardless of the fairness of the
procedures used to implement them." . . . Third,
it is a guarantee of fair procedure, sometimes
referred to as "procedural due process": the State
may not execute, imprison, or fine a defendant
without giving him a fair trial, nor may it take
property without providing appropriate procedural
safeguards. [*Daniels v Williams,* 474 US 327, 337;
106 S Ct 662; 88 L Ed 2d 662 (1986) (Stevens, J.,
concurring).]

A claim that a governmental land-use decision
has worked a deprivation of property in violation
of the Due Process Clause may fall into one or
more of these categories. Into Justice Stevens' first
classification, for example, fall claims asserting
that governmental action has resulted in a "tak-
ing" of property without just compensation in
violation of the Fifth Amendment by a physical
occupation of the landowner's property. *Loretto v
Teleprompter Manhattan CATV Corp,* 458 US 419,
434-435; 102 S Ct 3164; 73 L Ed 2d 868 (1982).

A landowner may also assert that a land-use
regulation has denied the landowner all use of the
property even though there is no physical inva-
sion. Such a claim could fall into Justice Stevens'
first category if the landowner complains that the
regulation has effected a "taking" of the property,
*First English Evangelical Lutheran Church of
Glendale v Los Angeles Co,* 482 US 304; 107 S Ct
2378; 96 L Ed 2d 250 (1987), or, possibly, into the
second category if the complaint alleges not a
"taking for which the Fifth Amendment requires
just compensation" but that a regulation "goes so
far that it has *the same effect as a taking* by
eminent domain [and] is an invalid exercise of the

police power, violative of the Due Process Clause of the Fourteenth Amendment." *Williamson, supra,* p 197 (emphasis added).

> Should the government wish to accomplish the goals of such regulation, it must proceed through the exercise of its eminent domain power, and, of course, pay just compensation for any property taken. The remedy for a regulation that goes too far, under the due process theory, is not "just compensation," but invalidation of the regulation, and if authorized and appropriate, actual damages. [*Id.*]

Regardless of the manner in which a "regulatory taking" claim is framed, whether as a violation of the Just Compensation Clause of the Fifth Amendment or of the Due Process Clause of the Fourteenth Amendment, the claim does not ripen until the landowner has received a final decision regarding the application of the regulation or ordinance to the particular piece of property. *Williamson, supra; MacDonald, Sommer & Frates v Yolo Co,* 477 US 340; 106 S Ct 2561; 91 L Ed 2d 285 (1986). This is because regulatory taking claims depend upon an interference with the use of property that is so drastic as to represent the practical equivalent of a taking. Until such a final decision has been rendered, it is impossible to determine the extent of this interference.

Alternatively, a property owner challenging a particular land-use decision may advance a due process claim separate and distinct from the regulatory taking due process claim discussed in the preceding paragraph—that the property owner's due process rights have been otherwise interfered with by irrational or arbitrary governmental action. In contrast to regulatory taking due process claims, this type of substantive due process claim,

falling squarely into Justice Stevens' second category, "does not require proof that all use of the property has been denied . . . ." *Bateson v Geisse,* 857 F2d 1300, 1303 (CA 9, 1988), quoting *Herrington v Sonoma Co,* 834 F2d 1488, 1498 (CA 9, 1988), modified 857 F2d 567 (CA 9, 1988), cert den — US —; 109 S Ct 1557; 103 L Ed 2d 860 (1989).[1] Rather, "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." *Bello v Walker,* 840 F2d 1124, 1129 (CA 3, 1988), cert den 488 US 868; 109 S Ct 176; 102 L Ed 2d 145 (1988) (relying on *Daniels, supra*).[2]

## II. THE LEGAL FRAMEWORK OF THE SUBSTANTIVE DUE PROCESS CLAIM

It is well established that deliberate, irrational governmental action may violate due process guarantees. Both the majority in *Daniels* and Justice Stevens' concurrence emphasize this aspect of the Due Process Clause. As the *Daniels* majority observed, the

> guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. . . . [T]he Due Process Clause, like its forebear in the Magna Carta . . . was " 'intended to secure the individual from the arbitrary exercise of the powers of government.' " . . . And by barring certain government actions regardless of the fairness of the procedures used to implement them . . . it serves to prevent governmental power from being "used

---

[1] Nor are such claims restricted to governmental decisions involving land use. See, e.g., *Wilkerson v Johnson,* 699 F2d 325 (CA 6, 1983) (the right to a barber's license may not be arbitrarily denied).

[2] For purposes of this opinion, I will generally refer to this type of claim as a "substantive due process claim" and to the type of due process claim described in the preceding paragraph as a "regulatory taking due process claim."

for purposes of oppression," . . . [*Daniels, supra,* p
331. Emphasis in the original.][3]

Applying this theory in the land use context, the
Court of Appeals for the Third Circuit in *Bello*
reversed the federal district court's grant of sum-
mary judgment in favor of city council members
where the plaintiffs

> presented evidence from which a fact finder could
> reasonably conclude that certain council members,
> acting in their capacity as officers of the munici-
> pality improperly interfered with the process by
> which the municipality issued building permits,
> and that they did so for partisan political or
> personal reasons unrelated to the merits of the
> application for the permits. [*Bello, supra,* p 1129.]

Looking to *Daniels,* the court relied on the general
rule that "the deliberate and arbitrary abuse of
government power violates an individual's right to
substantive due process." *Bello,* p 1129. The court
distinguished an earlier decision from the same
circuit in which a *zoning* regulation was held not
to deprive the plaintiff of substantive due process.
*Pace Resources, Inc v Shrewsbury Twp,* 808 F2d
1023 (CA 3, 1987), cert den 482 US 906 (1987). In
*Pace,* the complaint alleged no facts suggesting
that the zoning was arbitrary, and it did "not
present a case involving actions aimed at this
developer for reasons unrelated to land use plan-
ning." *Bello,* p 1129.

Other federal courts have also found that a
denial of a land use permit may give rise to a
substantive due process claim. See, e.g., *Scott v*

---

[3] See also *Parratt v Taylor,* 451 US 527, 545; 101 S Ct 1908; 68 L Ed
2d 420 (1981) ("there are certain governmental actions that, even if
undertaken with a full panoply of procedural protection, are, in and
of themselves, antithetical to fundamental notions of due process").
(Blackmun, J., concurring.)

*Greenville Co,* 716 F2d 1409, 1418-1421 (CA 4, 1983) (allegations of abuse of discretion or caprice in zoning administrator's refusal to issue permit stated substantive due process claim); *Southern Coöperative Development Fund v Driggers,* 696 F2d 1347, 1356 (CA 11, 1983), cert den 463 US 1208 (1983) (substantive due process is violated where unauthorized requirements are imposed on a permit applicant); *Littlefield v City of Afton,* 785 F2d 596, 607 (CA 8, 1986) (complaint alleging an arbitrary and capricious imposition of an unconstitutional condition on a permit application stated a substantive due process claim).

In addition, even those judges in the federal courts of appeals disfavoring substantive due process claims in the land use context have admitted the viability of such claims in appropriate cases. See *Creative Environments, Inc v Estabrook,* 680 F2d 822, 833 (CA 1, 1982) (the plaintiff was not denied due process by the denial of the development plan where the dispute with the town planning agency was "not tainted with fundamental procedural irregularity, racial animus, or the like"); *Lemke v Cass Co,* 846 F2d 469, 472 (CA 8, 1987) (en banc) (Arnold, J., concurring) (stating that the substantive due process claims should be limited to cases in which challenged land use decisions bearing "no relationship whatever to the merits of the pending matter"); *Coniston Corp v Village of Hoffman Estates,* 844 F2d 461, 467 (CA 7, 1988) (Posner, J.) ("Of course if a zoning decision is based on considerations that violate specific constitutional guarantees, it is invalid; but in all other cases the decision can be said to deny substantive due process only if it is irrational"); *Chiplin Enterprises, Inc v City of Lebanon,* 712 F2d 1524, 1528 (CA 1, 1983) (suggesting that substantive due process claims may be viable where "rec-

ognized fundamental constitutional rights are abridged," quoting *Estabrook, supra*).

The majority finds it significant that the United States Supreme Court "has yet to employ such an approach in cases involving the wrongful denial of a land use permit." *Ante,* p 76. However, in *Village of Euclid v Ambler Realty Co,* 272 US 365; 47 S Ct 114; 71 L Ed 303 (1926), the Court considered a due process attack on a zoning ordinance. The Court rejected the challenge on the ground that the reasons advanced by the municipality on behalf of the zoning provisions were

> sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. [*Id.,* p 395.]

In more recent times, the Court has considered a claim that a municipal ordinance prohibiting excavations below a certain depth violated due process. The Court held that the plaintiff failed to sustain its burden of proving the ordinance to be an invalid exercise of the town's police power. *Goldblatt v Town of Hempstead,* 369 US 590, 594-596; 82 S Ct 987; 8 L Ed 2d 130 (1962).[4]

Finally, I note that *this* Court has employed that theory before. In *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), we unanimously

---

[4] The Court has also reached the merits of a due process claim involving property rights, albeit not in a classic land use case. In *PruneYard Shopping Center v Robins,* 447 US 74; 100 S Ct 2035; 64 L Ed 2d 741 (1980), the Court considered a claim that a state law permitting individuals to exercise First Amendment rights on the property of a privately owned shopping center effected a denial of property without due process. The Court, relying on *Nebbia v New York,* 291 US 502, 525; 54 S Ct 505; 78 L Ed 940 (1934), rejected the claim because the law was not unreasonable, arbitrary, or capricious. *Robins, supra,* pp 84-85.

accepted the proposition that the enactment of an irrational zoning ordinance may deny a landowner substantive due process. *Id.*, pp 157-159, 167 (LEVIN, J., concurring). The majority quoted extensively from *Euclid, supra,* in its analysis of the plaintiffs' substantive due process claim, which was considered separately from the plaintiffs' taking claim.[5]

### III. ELECTRO-TECH'S DUE PROCESS CLAIM IN THE LOWER COURTS

Electro-Tech's fourth amended complaint adequately alleged facts to support its substantive due process claim. At the close of proofs, Circuit Judge Giovan determined that if in fact the City of Westland imposed the dedication requirement as a condition for obtaining a building permit, then, as a matter of law, Electro-Tech had established a constitutional violation for purposes of § 1983.[6] The Court of Appeals reversed, finding that "plaintiffs

---

[5] See also *Cryderman v City of Birmingham,* 171 Mich App 15, 23-25; 429 NW2d 625 (1988) (following *Kropf*).

[6] Judge Giovan further stated:

Plaintiffs here were complaining of a very specific act, and whether that act, if done by the City, did violate Section 1983 is a question of law. It can't be a question of fact. . . . [I]t's my determination that if they did impose that condition, that it is not a legitimate condition; it's an illegal one, and did deprive them of the right of property without due process.

Judge Giovan made these observations in response to the city's request that the jury be instructed that a violation of state law in and of itself is not sufficient to establish liability under § 1983. While I agree with Judge Giovan's conclusions, see the discussion of *Nollan* in section v(B), I note here that the city did not challenge Judge Giovan on the record to specify either the precise source of the constitutional violation or the precise property right violated. The city's only request directly addressing a particular constitutional provision was that the jury be instructed that due process imposes a shocking-to-the-conscience standard. Judge Giovan properly declined to so instruct the jury.

have shown no constitutional violation." *Electro-Tech v H F Campbell Co,* 161 Mich App 622, 628; 411 NW2d 800 (1987).

On appeal in this Court, Electro-Tech argues that its property rights were deprived:

> [D]ue to a "calculated, deliberate abuse of governmental power," the City was guilty of violating plaintiff's constitutionally protected right to substantive due process. [Citing *Daniels v Williams, supra.*]

### IV. THE RIPENESS OF ELECTRO-TECH'S DUE PROCESS CLAIM

In my opinion, the *Williamson* ripeness requirements do not present an obstacle to our consideration of the merits of Electro-Tech's substantive due process claim.

### A

Initially, I note that because Electro-Tech's substantive due process claim does not require proof of an *uncompensated* taking, the *Williamson* requirement that an aggrieved property owner seek compensation is inapplicable. *Williamson, supra,* pp 194-195.

Perhaps less obviously, the *Williamson* final decision requirement is also inapplicable. *Williamson, supra,* pp 190-191. I believe that a principled decision to apply, or not to apply, the finality requirement requires us to look beyond the label attached to a constitutional land use claim to the policy underlying the requirement and to the nature of the governmental conduct under attack.

In my opinion, the finality requirement must be applied only when a landowner's claim alleges

that a regulatory taking of the property has oc-
curred. A regulatory taking claim requires a show-
ing that the application of a regulation, usually a
facially legitimate exercise of the police power, has
caused an interference with the use of property
that is so drastic as to represent the practical
equivalent of a taking, even though there has been
no physical invasion of the property. Although
such a claim might be framed in two different
ways, the *Williamson* finality requirement is appli-
cable in both instances. In *Williamson,* the plain-
tiff challenged a local zoning ordinance under both
the Taking Clause of the Fifth Amendment and
under the Due Process Clause of the Fourteenth
Amendment, contending in both claims that the
application of the ordinance to its property had
resulted in the practical equivalent of a taking.
Because the plaintiff had failed to request vari-
ances from the regulations which formed the basis
of the planning commission's denial of the
plaintiff's land use application, the Court found
that it could not determine the effect of the regula-
tions on the use and value of the plaintiff's prop-
erty. *Id.,* p 190, n 11. Such determinations, the
Court reasoned, cannot be made "until the admin-
istrative agency has arrived at a final, definitive
position regarding how it will apply the regula-
tions at issue to the particular land in question."
*Id.,* p 191. See also *Hoehne v San Benito Co,* 870
F2d 529 (CA 9, 1989) (*Williamson* requirements
applied to a regulatory taking due process claim
when it was necessary to determine the govern-
ment's position as to an acceptable use of the
plaintiff's property); *Shelter Creek Development
Corp v City of Oxnard,* 838 F2d 375 (CA 9, 1988)
(same).

In a later case, the Supreme Court clarified the
application of the *Williamson* finality require-

ments. In *Yolo Co, supra,* p 344, a property owner alleged that the municipality's rejection of its subdivision plan deprived the property of its " 'entire economic use.' " The plaintiff's failure to secure a final determination whether some other sort of development would be permitted led the Court to reject the plaintiff's regulatory taking claim. The Court observed that in several earlier cases, including *Williamson,*

> we declined to reach the question whether the Constitution requires a monetary remedy to redress some *regulatory takings* because the records in those cases *left us uncertain whether the property at issue had in fact been taken.* Likewise, in this case, the holdings of both courts below leave open the possibility that some development will be permitted, and thus again leave us in doubt regarding the antecedent question whether appellant's property has been taken. [*Yolo Co, supra,* pp 352-353. Emphasis added.]

The finality requirement serves two related purposes in regulatory taking cases. It enables the judge and jury to determine how the applicable regulations will be applied to a particular piece of property and to decide whether the resulting interference with the property is so severe as to constitute the practical equivalent of a taking. Neither determination need be made in the instant case, because plaintiff's substantive due process claim, unlike that advanced by the landowners in *Williamson* and *Yolo Co,* is not a regulatory taking due process claim.

The defendant in this case did not merely apply to plaintiff's property a facially valid ordinance or regulation requiring all builders situated similarly to Electro-Tech to dedicate property for the widening of city streets. If the defendant had done so, it

might have made sense under *Williamson* to insist
that Electro-Tech have at least attempted to ob-
tain a further determination by showing that any
increased traffic burden resulting from the expan-
sion of its existing building would be insufficient to
justify the dedication requirement. However, no
such ordinance existed in the present case. Rather,
the city council pulled the dedication requirement
out of thin air and imposed it arbitrarily in a
resolution applicable to Electro-Tech only. This
resolution, like the variance decision required in
*Williamson,* was a concrete determination applica-
ble to a particular piece of property.

Moreover, Electro-Tech's due process claim does
*not* require proof that its property has been
"taken." In other words, Electro-Tech does *not*
have to show that the city's action resulted in
either a physical occupation of its property or a
restriction on the use of its property which was so
drastic as to represent the practical equivalent of
an actual physical "taking" of the property. Elec-
tro-Tech need only prove that it was deprived of
its property rights as a result of its refusal to
submit to the unconstitutional condition deliber-
ately and arbitrarily imposed by the city council.

The plaintiffs in *Williamson* and *Yolo Co,* on the
other hand, alleged that their real property had in
effect been taken by government action. The Su-
preme Court required those plaintiffs to obtain
final decisions regarding the application of the
regulations to their particular pieces of property
in order to enable the finders of fact to determine
whether the alleged interference with each
plaintiff's real property was in fact so severe as to
constitute a taking.

(Nor is any further decision by the city neces-
sary even to determine whether the *condition
itself* was, in fact, violative of the Fifth Amend-

ment. Had Electro-Tech actually complied with the dedication requirement in order to obtain the permit, there is no doubt that a permanent physical occupation of Electro-Tech's land would have resulted. See *Nollan, supra* [a permit condition unrelated to the merits of the application which threatened a permanent physical occupation of the landowner's property without compensation was unconstitutional]; *Parks v Watson,* 716 F2d 646, 650-654 [CA 9, 1983] [same].[7])

Because the *governmental* action in *Nollan* was nearly identical to the actions of the city, it is significant that the Supreme Court in *Nollan* did not even mention the final-decision requirement, despite its contemporaneity with the decision rendered in *First English,* in which a landowner alleged a regulatory taking and in which the Court *explicitly* found the final-decision requirement to be applicable. In the instant case, the final-decision requirement is not implicated because Electro-Tech's due process claim—that it was deprived of its *right to improve its property* by arbitrary and irrational government action—does not in any way require Electro-Tech to prove that the admittedly illegitimate condition imposed by the city actually resulted in such a severe restriction on Electro-Tech's ability to use its property as to violate Electro-Tech's *independent right* not to have its property taken without just compensation.[8]

For cases applying a similar analysis, see *Long Island Lighting Co v Cuomo,* 666 F Supp 370, 405 (ND NY, 1987) (the failure to satisfy the finality requirement barred the taking claim but not the

---

[7] The unconstitutionality of the dedication condition is discussed in section V(B).

[8] If, for example, the city council had instead imposed the equally unconstitutional condition that Electro-Tech contribute $1,000 to a local political party, Electro-Tech would not be required to show that it actually paid $1,000 to the party.

substantive due process claim which was "not dependent on the actual economic effect" of the land use decision upon plaintiff's property); *Long Grove Country Club Estates v Village of Long Grove,* 693 F Supp 640, 657-658 (ND Ill, 1988) (applying the finality requirement to the taking challenge but not the substantive due process claim in a suit arising from the denial of a land use permit).

Although a final decision test has been applied in at least one case from the Court of Appeals for the Ninth Circuit, I find that basis for the application to be flawed. In addition, the due process claim in that case is distinguishable from that raised by Electro-Tech.

In *Herrington,* the court relied on an earlier decision from the same circuit for the proposition that the finality requirement applies to substantive due process claims. *Id.,* 857 F2d 569. In *Kinzli v Santa Cruz,* 818 F2d 1449 (CA 9, 1987), a different panel of the court found a landowner's substantive due process claim premature for want of a final decision. *Id.,* p 1456. Although the nature of the substantive due process claim is not discussed in detail, it appears from the district court's published opinion, *Kinzli v Santa Cruz,* 620 F Supp 609 (ND Cal, 1985), to which the Court of Appeals referred for further details, *Kinzli,* 818 F2d 1451, that the plaintiff's due process claim was in fact the sort of *regulatory taking* due process claim also raised in *Williamson.*

> *Plaintiffs do not challenge Measure 0 as facially invalid or as an arbitrary use of the City's police power;* rather they challenge the Measure on the grounds that as *applied* to their property it deprives them of an economically viable use. [*Kinzli,* 620 F Supp 616. Additional emphasis supplied.]

The *Herrington* court did not explain why the finality requirement applied in *Kinzli* to a regulatory taking due process claim should apply to a *nontaking* substantive due process claim. In the absence of a compelling policy analysis to support this extension of *Kinzli,* I am unable to concur with *Herrington's* analysis on this point.[9]

**B**

The application of the final-decision requirement proposed by the majority is misdirected not only because it erroneously assumes that Electro-Tech must demonstrate a "taking," *ante,* p 86, but also because it requires Electro-Tech to perform an exercise in futility and imposes upon Electro-Tech an unjustifiably high burden of proof on the issue of causation, which, in effect, would require Electro-Tech to establish an "entitlement" to a permit, a requirement which I believe should not be applied in this case. See section V(A).

**1**

The majority states:

> The Supreme Court's primary purpose in mandating a final decision from the appropriate administrative body was to establish the existence of a "taking" and the extent to which it has harmed the plaintiff. Thus, while a final decision by the building department in the instant case probably would not have resulted in approval of the site plan or the issuance of a building permit, it would

_____

[9] I observe, however, that the requirements applied in *Herrington*—a rejected development plan and an application for a variance—did not present an obstacle there because the plaintiff's attempt to comply therewith would have been futile. *Id.,* 857 F2d 569. Assuming arguendo the applicability of the *Herrington* requirements in the instant case, it is clear that further efforts by Electro-Tech to secure a permit without dedicating their land would have been futile.

have indeed resolved any issue regarding the four
"valid" conditions and would have established a
basis upon which a factfinder could conclude that
"but for" the improper dedication requirement,
Electro-Tech would have been able to "derive eco-
nomic benefit" from its land. *Williamson, supra* at
191.

   In light of the record in the instant case as well
as the purpose underlying the *Williamson* finality
requirement, we reject the plaintiff's assertion
that it would have been futile to submit an
amended site plan to the building department.
[*Ante,* pp 86-87.]


   It is true, as the majority suggests, that the
"ultimate decision regarding building requests lies
with the building department. . . . [T]he building
department is responsible for examining the final
site and building plans . . . and, if everything is
approved, for ultimately issuing the permit." *Ante,*
pp 84-85. But the building department has no
discretion to override a condition imposed by the
city council. Its sole function is to determine
whether the final plans conform to the require-
ments of the building code and zoning ordinance
with such modifications as may have been ap-
proved by the city council or board of zoning
appeals.

   The head of the building department, Robert
Fritz, testified that "we do not make the final
decision," and that the ultimate decision is made
by the "[zoning board of appeals], Planning Com-
mission or City Council."[10] He said he would en-

---

[10]  *Q.* In what position are you employed there?
    *A.* I'm the Building Director.

                        *   *   *

    *A.* I'm responsible for all the building and construction,
electrical, plumbing, hearing coördinates, zoning, everything
that goes on within the City for building.
    *Q.* Can you tell the jury, as far as building and requirements

force the city council's decision requiring the dedication of the parcel whether it was, in his opinion, "right or wrong," and on *cross-examination by the city* explained that it was not part of his responsibility[11] to question such a condition. A planning

---

for building, who forms the policies of the City of Westland in making restrictions, contingencie [sic] and things of that nature?

A. It'd either be ZBA, Planning Commission or City Council.

\* \* \*

Q. Is there any time since you've been the Building Director that various departments within the City have gotten together to form a policy on what you would require for buildings in your city?

A. We are—we are fully a recommending body. *We are not a decision body. We recommend, but we do not make the final decision.*

Q. We is [sic] . . .

A. . . . is the Building, Engineering or Planning.

Q. The Building Department, the Engineering Department, the Planning Department, they're all recommending bodies.

A. They're recommending bodies.

Q. And the ultimate decision in the City is made by whom?

A. The ZBA, Planning Commission or the City Council.

Q. *All three of those bodies have to make the decision?*

A. No, not all of them.

Q. Any one of the three or how does that work?

A. Either all three of them, possibly two of them, possibly just one of them.

[11] Q. Under the circumstances surrounding this particular case though, July 11th, 1979, the Council voted on a resolution to approve the site plan contingent upon certain things including dedicating a portion of the property. Approximately two weeks later you became the Building Director of the City of Westland. Is that not true?

A. That's true.

Q. Based on [sic] that resolution, when the owner of Electro-Tech wanted to proceed in order to obtain his building permit, he would still have to go through your—through the department that you were director of at that time?

A. Correct.

Q. Okay. At that time under those particular circumstances if a contingency was placed that you felt was wrong or improper because the City Council had made that resolution, would you enforce it as the Building Director for the City of Westland?

A. Yes.

examiner for the building department similarly testified that the building department would not issue a building permit unless the twenty-seven-foot parcel had been dedicated.[12]

It is immaterial that Electro-Tech "failed to submit a final site plan (either to the council or to the building department) reflecting at least"[13] compliance with the four unobjectionable conditions. The testimony of the city employees clearly establishes that it would have been futile for Electro-Tech to do so and that no building permit would have been issued unless Electro-Tech had complied with the remaining and illegal dedication requirement. Even assuming for the moment that Electro-Tech in fact failed to comply with the four unobjectionable conditions, there is no support for the conclusion "that the process for obtaining the city's permission to build had not yet been completed."[14]

From the fact that the city council "conditionally" approved the site plan subject to the unconstitutional dedication requirement, the majority

---

*Q.* Whether that's right or wrong in your opinion?

*A.* Yes. . . .

*Q.* Just in follow-up to the last question you were asked, when those contingencies are placed on a site plan is it your responsibility to question those?

*A.* No. To question the restrictions?

*Q.* The contingencies?

*A.* The contingencies, no. No.

[12] *Q.* If the Planning Department in your city places a contingency, such as the dedication of 27 feet of property, in order to get a building permit and the City Council approves that and adopts that recommendation; will the Building Department issue a building permit if that 27 feet is not dedicated or that portion of the property is not dedicated?

*A.* No sir . . . .

[13] *Ante,* p 84.

[14] *Ante,* p 85.

concludes that "the entire matter had not yet been finally resolved and that Electro-Tech would have to submit an amended site plan before it could begin building." *Ante,* p 85. But the city council's decision on the unconstitutional condition, on which approval depended, was conclusive. The amendment and resubmission contemplated by the majority, absent compliance with the dedication requirement, would have been to no avail.

In sum, I cannot agree that the ultimate decision regarding Electro-Tech's ability to improve its property was vested in the building department. The only "ultimate decision" of the building department—whether to issue a building permit—was nondiscretionary and nondecisional. The building department's sole function was to decide whether the final plans conformed to the building code and zoning ordinance as they may have been modified in this particular case by the board of zoning appeals or the city council. The building department had no authority to revise the June 11 city council resolution nor to issue a building permit absent dedication of the property. Uncontroverted evidence at trial showed conclusively that a building permit would never have been issued even if all other contingencies required by the Westland City Council other than the dedication requirement had been fulfilled.

2

Moreover, if the *Williamson* finality requirement were construed so broadly as to require a decision from the Westland building department—a body with no discretionary authority regarding Westland's demand for the illegal dedication of land— the Court would be abandoning the core of its proper legal inquiry as to whether a final relevant

city policy was established in the context of this case and would instead be embarking, improperly, on an extended and purely factual inquiry which duplicates that already undertaken by the jury.

It is true that if we were to require of plaintiffs that they prove as a matter of law that the defendant's wrongful conduct is the only possible cause of the resulting harm in a given case, then we could rest assured that every verdict unfavorable to a defendant would be justified. The majority appears willing to hold Electro-Tech to such an unprecedented standard of proof by insisting that Electro-Tech demonstrate to a certainty that its failure to receive a permit is attributable solely to the dedication requirement. The requirement of such a standard of proof from the plaintiff, notwithstanding the finality requirement of *Williamson,* is not uniquely justified by the special context of § 1983 actions. "[F]ederal tort statutes such as 42 USC 1983 are not self-contained. They are enacted against a background of common law tort principles governing causation and damages. . . . Those principles are therefore applicable to federal civil-rights tort cases unless unsuitable to them . . . ." *Taliferro v Augle,* 757 F2d 157, 161-162 (CA 7, 1985) (Posner, J.). See also *Parrett v Connersville, Indiana,* 737 F2d 690 (CA 7, 1984), cert dis 469 US 1145 (1985), in which the Court of Appeals for the Seventh Circuit stated that, in examining § 1983 decisions,

> [n]othing in any of these cases suggests to us that if a plaintiff succeeds in proving a violation of his constitutional rights, the principles used to determine whether he has demonstrated that the violation caused the injury for which he is seeking damages should be other than those applied in ordinary tort cases. [*Id.,* p 695 (Posner, J.).]

The jury in this case, on the issue of causation, was instructed that Electro-Tech had the burden of proving

> that the Defendant, City of Westland, knowingly imposed as a condition of the Plaintiff obtaining a building permit that the Plaintiff give up twenty-seven feet of its property to the City. Or to state it another way, they must prove that the City refused to grant a building permit to the Plaintiff unless the Plaintiff dedicated twenty-seven feet of its property to the Defendant at no charge.
>
> * * *
>
> [And] that the act complained of on the part of the Defendant was a proximate cause of the damages suffered by the Plaintiff. An act is a proximate cause of damages if the damages are a natural and probable consequence of the act.

The City of Westland made no objection to the instruction. In particular, the city has never argued that the trial court's definition of causation in terms of "natural and probable consequences" was unsuitable in this case or in any way incompatible with the requirement set forth in *Monell v Dep't of Social Services,* 436 US 658, 694; 98 S Ct 2018; 56 L Ed 2d 611 (1978), that the municipal policy or custom[15] be the "moving force" behind the constitutional violation.

The majority's proposed application of the *Williamson* finality requirement would transform the question of causation from a question of fact for the jury into a question of law for the court. However, it is not the *court's* function to conclude whether the dedication requirement caused the plaintiff harm. Nor do any common-law tort principles justify requiring Electro-Tech to prove "certainty" or any other standard of proof beyond that

---

[15] See n 16.

given by Judge Giovan in his instructions to the jury. Under some circumstances, it may be proper for the Court to reexamine proof of causation in a tort cause of action. But, "[i]f reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury." *Matras v Amoco Oil Co,* 424 Mich 675, 682; 385 NW2d 586 (1986) (emphasis added). Even such a comparatively modest review, however, is inappropriate in this case, because the defendant failed at trial to challenge the adequacy of the evidence of causation in a motion for a new trial or for judgment notwithstanding the verdict.[16] *Napier v Jacobs,* 429 Mich 222; 414 NW2d 862 (1987).

The proposition that Electro-Tech must prove

---

[16] Westland did move for a directed verdict, but it did not do so on grounds of inadequate evidence of causation (let alone a lack of a "final" decision by the Westland building department). Rather, Westland, citing *Monell, supra,* argued that more than one instance of unconstitutional wrongdoing is necessary in order to find the official policy or custom required for municipal liability under § 1983. The trial judge responded by quoting directly from *Monell:*

> "That consideration is absent altogether where the wrong done, if done at all, is done by the municipal decision makers themselves."
>
> And that's exactly what we have here . . . . And no less a body than the City Council itself. Here's a City Council acting in an official capacity imposing this condition for granting a building permit. There couldn't be a clearer example of municipal decision making by the decision makers themselves, the highest legislative authority that the City had. There could not be a clearer expression of their own decision making policy. This is not an attempt to impose liability on the City [on the basis of acts] by some low level individual employee, who in some random act violates someone's civil rights. This is virtually the City itself, if it was wrong at all, making a clearly of a clear [sic] legislative or executive decision, whichever you want to call it, affecting the Plaintiff's rights.

The defendant also argued on its motion for directed verdict that Electro-Tech's means of proving damages were inadequate. The latter issue was presented on appeal in the Court of Appeals, which found it unnecessary to issue a ruling on the issue.

that it would have received approval *but for* the unconstitutional condition essentially calls upon Electro-Tech to demonstrate an entitlement to the permit. As explained in the following section, I do not believe that the law requires Electro-Tech to make such a showing.

### V. THE MERITS OF ELECTRO-TECH'S DUE PROCESS CLAIM

Having concluded that Electro-Tech's claim is ripe, I turn now to the merits of the claim. First, while Electro-Tech's substantive due process claim does not depend on an antecedent demonstration that a taking has occurred, it may nevertheless be necessary to identify a constitutionally protected property interest of which Electro-Tech was deprived without due process. Second, it is necessary to determine whether the governmental action which affected the property interest was arbitrary and irrational.

### A

### 1

In *Bello,* the court did not look to see whether the plaintiffs had a protected property or liberty interest under state law, holding instead that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." *Bello, supra,* p 1129. The viability of the plaintiff's constitutional claim in that case did not depend on an antecedent *legal* determination that the plaintiff had a "legitimate claim of entitlement" to the permit. Rather, the court held that the jury must determine whether the interference with the plaintiff's right to build on his land was occasioned by a legitimate permit requirement or

by an illegitimate use of governmental power by the issuing body.[17]

Some federal courts, however, have augmented the *Bello* analysis with the preliminary inquiry whether the plaintiff had established the existence of a state-created liberty or property right entitled to federal constitutional protection. See, e.g., *Scott v Greenville Co,* 716 F2d 1409, 1418 (CA 4, 1983) (the applicant's interest in a building permit was protected); *Rymer v Douglas Co,* 764 F2d 796, 801 (CA 11, 1985) (real property); *Yale Auto Parts v Johnson,* 758 F2d 54, 58 (CA 2, 1985) (there was no property interest in a certificate of use to operate a junkyard); *Sullivan v Town of Salem,* 805 F2d 81, 84 (CA 2, 1986) (there was a protectible interest in a certificate of occupancy); *Dean Tarry Corp v Friedlander,* 826 F2d 210 (CA 2, 1987); *RRI Realty Corp v Village of Southampton,* 870 F2d 911 (CA 2, 1989) (wide discretion to deny a permit under local law defeated a claim of property interest). See also *Wilkerson v Johnson,* 699 F2d 325, 328 (CA 6, 1983) (the applicant's interest in a barber's license was protected); *Packish v McMurtrie,* 697 F2d 23, 25 (CA 1, 1983) (there was no protectible interest in indemnification for injuries).

If such a preliminary inquiry into the existence of a constitutionally protected interest were required in this case, it would be of paramount importance in describing Electro-Tech's interest in building on its land to determine whether that

---

[17] I thus find *Chiplin Enterprises, Inc v City of Lebanon,* 712 F2d 1524 (CA 1, 1983), relied on by the city and the Court of Appeals, of no help to the city. In light of *Bello* and *Nollan,* discussed in subsection B, below, *Chiplin's* assertion that an improperly motivated, bad-faith refusal to follow state law in denying a building permit raises no more than a matter of local concern is questionable. *Chiplin,* pp 1527-1528. So, too, is its conclusion that such action does not involve the abridgement of "fundamental constitutional rights . . . ." *Id.,* p 1528, quoting *Creative Environments, Inc v Estabrook,* 680 F2d 822 (CA 1, 1982), cert den 459 US 989 (1982).

interest should be treated as a property or liberty interest enjoyed by Electro-Tech as an incident of its ownership of the property, or as a government privilege or benefit which did not rise to the level of a constitutionally protected interest until such time as Electro-Tech's "unilateral expectation" of receiving the permit became a "legitimate claim of entitlement" to it. *Bd of Regents v Roth,* 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972). Justice Brennan, dissenting in *Nollan,* argued that under *Ruckelshaus v Monsanto Co,* 467 US 986; 104 S Ct 2862; 81 L Ed 2d 815 (1984), the granting of government approval where the property in question is subject to regulation is a government benefit. *Nollan, supra,* p 860, n 10 (Brennan, J., dissenting). This view was explicitly rejected by the majority.

> [T]he right to build on one's own property—even though its exercise can be subjected to legitimate permitting requirements—cannot remotely be described as a "governmental benefit." And thus the announcement that the application for (or granting of) the permit will entail the yielding of a property interest cannot be regarded as establishing the voluntary "exchange," that we found to have occurred in *Monsanto.* [*Id.,* p 834, n 2. Citation omitted.]

Thus, it was immaterial in *Nollan* whether the Nollans had presented a legitimate claim of entitlement to the building permit. Presumably, such a showing could not have been made, since the Court was willing to assume that the California Coastal Commission enjoyed broad enough discretion to have denied the Nollans' request for a permit altogether. *Id.,* p 835.

In my opinion, *Nollan* compels the conclusion that Electro-Tech's right to improve its property

subject to legitimate permitting requirements[18] was violated by the city's admittedly illegitimate imposition of the dedication condition.[19] The dispute between the parties whether Electro-Tech actually complied with the four remaining contingencies need not be resolved in light of *Nollan.*

Because *Nollan* makes clear that the right to build on one's property is not to be treated as a government benefit, it is puzzling that some courts have continued to apply the government benefit/ entitlement analysis in similar cases after the Supreme Court's decision in *Nollan* and without mentioning that case. See *Carolan v Kansas City,* 813 F2d 178 (CA 8, 1987); *Spence v Zimmerman,* 873 F2d 256 (CA 11, 1989); *RRI Realty, supra.* In *RRI Realty,* the court, without reference to *Nollan,* considered itself bound by pre-*Nollan* Second Circuit precedent to apply a government benefit/entitlement test in a land use permit case; it nevertheless questioned the wisdom of this type of inquiry:

> It is not readily apparent why land regulation cases that involve applications to local regulators have applied the *Roth* entitlement test to inquire whether an entitlement exists in what has been applied for—whether a zoning variance, a business license, or a building permit—instead of simply recognizing the owner's indisputable property interest in the land he owns and asking whether local government has exceeded the limits of substantive due process in regulating the plaintiff's use of his property by denying the application arbitrarily and capriciously. [*RRI, supra,* p 917.]

These cases, however, do not change the fact

---

[18] In my opinion, this right clearly rises to the level of a property interest under state law.

[19] I decline to express an opinion regarding the applicability of *Roth*-based government benefit analyses to cases involving more than the right to build on one's own property.

that *Nollan* has eroded the applicability of the
entitlement analysis in this context. Moreover,
many courts in addition to *Bello,* both before and
after *Nollan,* have not applied such an analysis.
See *Herrington, supra; Scudder v Town of Green-
dale,* 704 F2d 999 (CA 7, 1983) (building permit);
*Neiderhiser v Borough of Berwick,* 840 F2d 213
(CA 3, 1988), cert den 488 US 822; 109 S Ct 67; 102
L Ed 2d 44 (1988) (zoning exemption application);
*Batch v Town of Chapel Hill,* 376 SE2d 22 (NC
App, 1989) (subdivision application); *Bateson, su-
pra;* see also *Epstein v Town of Whitehall,* 693 F
Supp 309 (ED Pa, 1988) (development application).

I conclude that a government benefit/entitle-
ment analysis is not required in this case, and that
Electro-Tech's interest in improving its property
subject to legitimate permitting requirements was
a property interest protected by the Due Process
Clause of the Fourteenth Amendment.

2

The majority concedes, as it must, that the
Supreme Court in *Nollan* explicitly rejected the
proposition that the right to improve one's prop-
erty should be treated as a government benefit.
*Ante,* p 77, n 22.

The majority then immediately disregards this
recent teaching and rejects Electro-Tech's substan-
tive due process claim on the very ground that
Electro-Tech "did not have a *legitimate claim of
entitlement* to the building permit . . . ." *Ante,* p
77, n 22 (emphasis in original).

In the majority's view, I have read footnote 2 of
*Nollan* "too broadly." *Id.* Clearly, I am not expan-
sively interpreting "the right to build on one's
property . . . subject[ ] to legitimate permitting
requirements" to include some interest broader

than or different from the right to build on one's property subject to legitimate permitting requirements. *Nollan, supra,* p 834, n 2. The majority's explanation for the alleged overbreadth of my reading of footnote 2, as well as for the inconsistency described above, is, simply, that "*Nollan* is a taking case." *Ante,* p 77, n 22. This explanation includes a tacit acceptance of the incredible proposition that the right to build on one's property subject to legitimate permitting requirements is only a government benefit when property happens to be discussed in the framework of a Fourteenth Amendment due process claim, but is a property interest when considered in the context of a Fifth Amendment claim. The basic similarity between this case and *Nollan,* however, is too close to be glossed over by an unspoken, and, in my opinion, unjustified assumption. Despite the majority's statement that the plaintiffs in *Nollan* "were *entitled* to build on their land," *ante,* p 77, n 22 (emphasis in original), there is no suggestion in *Nollan* that the plaintiffs needed to show an entitlement; indeed, there is explicit language to the contrary. *Nollan,* p 833, n 2.

It may be true that a legitimate entitlement inquiry, when properly undertaken in a true government benefit case, is a question of law. The disposition of such a legal question, however, requires the court to resolve preliminary factual issues. As noted above, Judge Giovan determined that if the dedication requirement had been imposed, then Electro-Tech was deprived of *property* without due process. See section III. Had the city challenged Judge Giovan to explain the factual basis of his conclusion of law that Electro-Tech's right to property had been deprived without due process, Judge Giovan could have justified his conclusion on the basis of the testimony adduced

at trial. Fred Campbell, president of the construction company with whom Electro-Tech contracted for the erection of Electro-Tech's building, testified that "as far as our plans and our specifications are concerned, the job met all of those conditions and we were poised to give [Mr. Beauchamp] the service that he expected."[20] The majority offers the unsupported conclusion, however, that the four remaining contingencies "were never satisfied." *Ante,* p 77, n 22.[21] Assuming, still, that a government benefit analysis were proper, Judge Giovan's conclusion that Electro-Tech was deprived of *property* without due process would encompass the conclusion that Electro-Tech had demonstrated an entitlement to build on its land. Because there was support at trial for this conclusion, it cannot be said that Judge Giovan's conclusion had no basis in fact. The majority is thus reaching out without explanation to resolve a factual matter which Electro-Tech was never called upon to address in detail.

Because the satisfaction of the four legitimate conditions was not a material issue at trial,[22] it would be somewhat understandable if the majority explicitly chose to overlook the city's failure to object to the factual basis of Judge Giovan's conclusion. Assuming the applicability of a government benefit/entitlement test in this case, the very worst Electro-Tech should have to endure would be a remand to the trial court for further proceedings to determine whether in fact the four conditions

[20] Mr. Campbell also stated that he had never encountered a situation where it was impossible to obtain a building permit in his fifty-five years of experience.

[21] I note that the Court of Appeals found that "[t]he city council approved the site plan subject to five contingencies, *all of which were met except for the dedication." Electro-Tech,* 161 Mich App 624-625 (emphasis added).

[22] On appeal, the parties dispute this issue.

had been satisfied. Even if I were persuaded that a government benefit analysis were justified, I would nevertheless not be inclined to remand this case. The satisfaction of the four remaining conditions would not have made a whit of difference in the outcome of Electro-Tech's application. As explained above in the context of the majority's misdirected finality analysis, which the majority's equally misdirected government benefit analysis so closely resembles, the plaintiff ought not be put through exercises in futility.

The practical effect of the finality and entitlement analyses endorsed by the majority is to reward obdurate action on the part of a governmental agency aiming to obfuscate or delay permit applications of those, like Electro-Tech, to whom the agency had no intention of granting a building permit under lawful conditions. The majority thus imposes upon the plaintiff the burden of engaging in impractical maneuvers in distant anticipation of litigation which are entirely inconsistent with intelligent business operations and common sense.

B

In light of *Nollan v California Coastal Comm, supra,* there can be little doubt that the dedication condition imposed by the City of Westland, which deprived Electro-Tech of its right to improve its property, was arbitrary and irrational. The utter absence of any colorable justification for the dedication requirement coupled with the city's admission on appeal that the city's actions were "clearly wrong" compel this conclusion.

Like Electro-Tech, the Nollans sought to build on their property. The Nollans wished to demolish a dilapidated bungalow on their beachfront property and replace it with a three-bedroom house.

The California Coastal Commission, like the City
of Westland, approved the landowner's application
on the condition that the landowners consent to a
"permanent physical occupation" of a portion of
their property. *Id.,* p 832.[23] The Court observed
that the commission could not simply have re-
quired the Nollans to convey the easement without
compensation without violating the Fourteenth
Amendment. *Id.,* pp 833-834. The Court further
acknowledged that a governmental body could
impose a permit condition pursuant to its police
power if the condition serves the same legitimate
purpose as an outright refusal to issue the permit.
*Id.,* pp 836-837. With regard to the conveyance
requirement imposed by the commission, however,
the Court stated:

> The evident constitutional propriety disappears
> . . . if the condition substituted for the prohibition
> utterly fails to further the end advanced as the
> justification for the prohibition. When that essen-
> tial nexus is eliminated, the situation becomes the
> same as if California law forbade shouting fire in a
> crowded theater, but granted dispensations to
> those willing to contribute $100 to the state trea-
> sury. While a ban on shouting fire can be a core
> exercise of the State's police power to protect the
> public safety, and can thus meet even our strin-
> gent standards for regulation of speech, adding the
> unrelated condition alters the purpose to one
> which, while it may be legitimate, is inadequate to
> sustain the ban. Therefore, even though, in a
> sense, requiring a $100 tax contribution in order
> to shout fire is a lesser restriction on speech than
> an outright ban, it would not pass constitutional
> muster. *Similarly here, the lack of nexus between
> the condition and the original purpose of the*

[23] In *Nollan,* the commission required merely an easement across
the Nollan's property, whereas the City of Westland demanded that
Electro-Tech give away the entirety of its interest in the twenty-
seven-foot parcel.

*building restriction converts that purpose to some-
thing other than what it was. The purpose then
becomes, quite simply, the obtaining of an ease-
ment to serve some valid governmental purpose,
but without payment of compensation. Whatever
may be the outer limits of "legitimate state inter-
ests" in the takings and land-use context, this is
not one of them. In short, unless the permit condi-
tion serves the same governmental purpose as the
development ban, the building restriction is not a
valid regulation of land use but "an out-and-out
plan of extortion." [Id., p 837. Citations omitted,
emphasis supplied.]*

Noting that a governmental entity may not rely
on its police power to abridge property rights
unless the effect of its action is to *substantially*
advance a legitimate state interest, the Court
warned:

We are inclined to be particularly careful about
the adjective where the actual conveyance of prop-
erty is made a condition to [sic] the lifting of a
land-use restriction, since in that context there is
heightened risk that the purpose is avoidance of
the compensation requirement, rather than the
stated police power objective. [*Id.,* p 841.]

While the commission in *Nollan* attempted to
persuade the Court that there were legitimate
reasons for imposing the conveyance require-
ment,[24] the City of Westland does not contend that
the dedication requirement was justified, for exam-
ple, by a projected increase in traffic attributable
to the expansion of Electro-Tech's building.[25] As in

---

[24] See *Nollan, supra,* pp 845-847 (Brennan, J., dissenting).

[25] I express no opinion concerning the burden a local governmental
body must sustain in order to justify a dedication requirement along
these lines. I observe that *Nollan* not only found the conveyance
requirement in that case to be unconstitutional because it did not
serve the same purpose as a flat prohibition on development, *Nollan,*

*Nollan,* the city's "imposition of the permit condition cannot be treated as an exercise of its land use power . . . ." *Id.,* p 839. As Justice Stevens has explained with regard to substantive due process claims,

> the constitutional violation is complete as soon as the prohibited action is taken; the independent federal remedy is then authorized by the language and legislative history of § 1983. [*Daniels, supra,* p 338 (Stevens, J., concurring)].[26]

By arbitrarily forcing Electro-Tech to choose between two constitutionally protected property rights, the city violated Electro-Tech's right to substantive due process.[27]

## VI

Further comparison of the instant case to *Nollan* persuades me that Electro-Tech should prevail on its substantive due process claim.

### A

In both cases, the government compelled the

---

*supra,* p 836, it also interpreted the constitution to require "that the regulation 'substantially advance' the 'legitimate state interest' sought to be achieved, . . . not that 'the State "could rationally have decided" the measure adopted might achieve the State's objective.' " [*Id.,* p 834, n 3. Citations omitted.]

[26] See also *Rutherford v Berkeley,* 780 F2d 1444, 1447 (CA 9, 1986); *Bateson v Geisse, supra,* p 1303.

[27] The majority offers the unsupported assertion that this case was "tried . . . on a regulatory taking due process theory" because "[t]here was no instruction relating to *substantive* due process or to the 'arbitrary' or 'unreasonable' nature of the council's dedication requirement." *Ante,* p 77. Because the city offered no justification whatsoever for the dedication requirement, there were no questions of fact for the jury to resolve regarding the arbitrary and irrational nature of this condition. Judge Giovan recognized this when he concluded that Electro-Tech's property rights had been violated as a matter of law given the imposition of the dedication condition. Thus, I do not agree with the majority's reasoning or result on this issue.

landowners to yield either (1) the right to build on their property (subject to legitimate permitting requirements), or (2) the right not to have their land taken by a permanent physical occupation without just compensation. In *Nollan,* the imposition of the unconstitutional permit condition forced the Nollans to choose between "surrender-[ing] either a restrictive covenant or a lateral easement over [their] land."[28] Here, the imposition of the dedication requirement by the city after it had approved Electro-Tech's application offered Electro-Tech a similar Hobson's choice. The difference between *Nollan* and this case is not the choice forced upon the landowners by the government, but rather the *reaction of the landowners* to the government's extortionate demand. In *Nollan,* the landowners, faced with a choice of relinquishing one of two constitutionally protected rights, chose not to give up their right to build on their property. While their petition for a writ of mandamus to strike the conveyance requirement was on appeal in the California courts, the Nollans proceeded to raze the bungalow and erect a new house without notifying the commission and without complying with the easement condition.[29] They then sought to prevent the government from enforcing the easement requirement, which would have violated their independent right not to have property taken without just compensation, i.e., they sought to be kept whole. The Supreme Court agreed with the Nollans and held that *if* the government wished to "take" the Nollans' property, *then* it would have to give the Nollans just compensation. Thus, *Nollan* was framed as a "tak-

[28] Epstein, *Takings: Descent and resurrection,* 1987 Supreme Ct R 1, 41.

[29] *Nollan,* pp 828-829.

ing" case, because the *condition* imposed—which threatened a permanent physical occupation of a portion of the real property—violated the Taking Clause, not because an actual "taking" of the Nollans' property had already occurred. By analogy, consider a situation in which a city council conditions approval of a parade permit on participants' consent to unreasonable searches. A participant who refuses to allow such a search may have the condition removed not because the participant was actually subjected to an unconstitutional search, but because the *condition* violates the Fourth Amendment.

Electro-Tech, however, made the choice opposite to that of the Nollans. Declining to take the bull by the horns, Electro-Tech did not resort to self-help by proceeding with construction without the required building permit, as did the Nollans. By obeying the law and refraining from building without the required permit, Electro-Tech instead refused to relinquish its right not to have its property taken without compensation. Electro-Tech's insistence on retaining this latter right cost Electro-Tech its *independent* right to improve its property subject to legitimate permitting requirements.

For these reasons, this case is a due process case while *Nollan* was not. *Nollan* was a taking case because the condition the Nollans sought to invalidate violated the Taking Clause of the Fifth Amendment (applied to the states through the Fourteenth Amendment); the instant case is a due process case because Electro-Tech's refusal to allow a violation of the Taking Clause caused the deprivation of its independent property rights. The Nollans sought to prevent a Fifth Amendment violation; Electro-Tech sought to be made whole for the interference with its right to build on its property, which the jury found to have caused

Electro-Tech substantial injury. In terms of the aforementioned hypothetical parade permit, unlike the claim of a person seeking to *invalidate* the search condition, Electro-Tech's claim is analogous to that of a person *seeking redress* for harm to First Amendment rights resulting from a refusal to submit to the unconstitutional condition.

Finally, I believe that if the Nollans' rights could be vindicated despite their defiance of the law (building without the required permit), certainly Electro-Tech should not be punished or subjected to more difficult procedural hurdles for obeying the law and then seeking a remedy (§ 1983) for the unconstitutional deprivation which resulted.

### B

I do not believe that the principles recently applied by the Court in *Graham v Connor,* 490 US —; 109 S Ct 1865; 104 L Ed 2d 443 (1989), require us to employ a Fifth Amendment taking analysis to the exclusion of substantive due process theories in cases involving the regulation of land use.

In *Graham,* the Court rejected the proposition that claims alleging an excessive use of force by law enforcement officers under § 1983 are governed by a single "generic" standard. *Id.,* 104 L Ed 2d 453. This standard, applied under the title of substantive due process, was not derived from any specific source of constitutional protection. As the Court observed, however, citizens are protected against government conduct amounting to excessive force by three different constitutional provisions. The "reasonableness" standard of the Fourth Amendment guards against the excessive use of force in the course of an arrest or other seizure of a free citizen, whereas the less protec-

tive Eighth Amendment standard applies following conviction. *Id.,* 104 L Ed 2d 457. Pretrial detainees are protected by the Due Process Clause (although the Court left open the possibility that pretrial detainees may also enjoy Fourth Amendment protection). *Id.,* 104 L Ed 2d 455, n 10. Thus, the indiscriminate application by lower courts of the generic excessive force standard without regard to the applicability of any specific constitutional provision (including the Due Process Clause) improperly converted § 1983 into a source of substantive federally protected rights, contrary to the Court's repeated admonishments that § 1983 is merely a vehicle for "vindicating federal rights elsewhere conferred." *Id.,* 104 L Ed 2d 454 (citation omitted). The application of the generic excessive force standard by the lower court in *Graham* was neither derived from, nor compatible with, the Fourth Amendment, which already provided protection against government conduct amounting to excessive force in the course of an investigatory stop. The Court held that all claims of excessive force during the course of "seizures" are to be treated under the Fourth Amendment.

The due process analysis I have undertaken today bears little resemblance to the generic excessive force standard rejected by the Court in *Graham*. It should be emphasized that *Graham* does not call into question the viability of substantive due process analyses generally, or in the particular context of excessive force cases. Since pretrial detainees continue to enjoy the protection of the Due Process Clause against the excessive use of force amounting to punishment, *id.,* 104 L Ed 2d 455, n 10, and since the legitimacy of such uses of force do not depend on the "fairness of the *procedures* used to implement them," *Daniels, supra,* p

331 (emphasis added), the conclusion is unavoidable that the substantive component of the Due Process Clause is a specific source of constitutional protection even in excessive force cases.

The due process theory outlined above is not a generalized or generic theory potentially applicable to any and all government decisions affecting property. Rather, it is called into play only where it is alleged that government conduct amounting to an arbitrary and deliberate abuse of power has caused a deprivation of life, liberty or property. It would be appropriate, for example, to apply the Taking Clause, but not the Due Process Clause, where rational, nonarbitrary governmental actions cause a physical invasion of a landowner's property; or to apply the Equal Protection Clause, but not the Due Process Clause, where a facially constitutional land use law has the unforeseen effect of discriminating on the basis of race when applied in particular situations.

Not only is the due process theory employed in this case not a generic standard, it is not a free-floating standard unanchored to any specific constitutional provision. In language I have already quoted, the Court has clearly and forcefully stated that the

> guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. . . . [T]he Due Process Clause, like its forebear in the Magna Carta . . . was " 'intended to secure the individual from the arbitrary exercise of the powers by government' " . . . . [B]y barring certain government actions regardless of the fairness of the procedures used to implement them . . . it serves to prevent governmental power from being "used

for purposes of oppression" . . . . [*Daniels, supra,*
p 331. Emphasis in original.][30]

On the other hand, the Taking Clause (unlike
the Due Process Clause and the Fourth and Eighth
Amendments with respect to governmental con-
duct amounting to excessive force) does not pro-
vide "an explicit textual source of constitutional
protection against [the] sort of . . . governmental
*conduct*" undertaken by the City of Westland in
the instant case. *Graham, supra,* 104 L Ed 2d 454
(emphasis added).

> As its language indicates, and as the Court has
> frequently noted, [the Fifth Amendment] does not
> prohibit the taking of private property, but instead
> places a condition on the exercise of that power.
> This basic understanding of the Amendment
> makes clear that it is designed not to limit the
> governmental interference with property rights
> *per se,* but rather to secure *compensation* in the
> event of otherwise proper interference amounting
> to a taking. Thus, government action that works a
> taking of property rights necessarily implicates
> the "constitutional obligation to pay just compen-
> sation." [*First English, supra,* pp 314-315. Citations
> omitted; emphasis in original.]

I reëmphasize that the conditions imposed in
this case and in *Nollan* did not effect a taking of
property; rather, they threatened a taking. The
Taking Clause, however, is not concerned with
threats, but with *actual* uncompensated takings of
property.

Any preference for using the Fifth Amendment
as the specific constitutional theory of choice in
land use regulation cases, to the exclusion of the
Due Process Clause, is also questionable as a mat-

---

[30] See also n 3.

ter of constitutional interpretation. As Judge Posner observed in *Coniston Corp v Village of Hoffman Estates, supra,* p 464:

> One might have thought that the takings clause would occupy the field of constitutional remedies for governmental actions that deprive people of their property, and hence that the plaintiffs' waiver of their takings claim would drag their due process claims down with it. But this is not correct; pushed to its logical extreme, the argument would read "property" out of the due process clause of the Fifth and Fourteenth Amendments.

For these reasons I do not agree that the Taking Clause is the appropriate constitutional vehicle for analyzing Electro-Tech's § 1983 claim, or that Electro-Tech has shown a "taking" in this case.

## VII

I agree with the majority's conclusion that Electro-Tech was not required to exhaust administrative remedies before bringing a suit under § 1983.

I would squarely reject the city's contention that *Parratt v Taylor,* 451 US 527, 541; 101 S Ct 1908; 68 L Ed 2d 420 (1981), should bar Electro-Tech's substantive due process claim. *Parratt,* a procedural due process case, addressed negligent, random, and unauthorized acts of low-level state employees and is not applicable in the instant context. See *Scott v Greenville Co, supra,* p 1421, n 17; *Sullivan, supra,* p 86; *Rutherford v Berkeley,* 780 F2d 1444, 1447 (CA 9, 1986); *Gilmere v Atlanta,* 774 F2d 1495, 1498 (CA 11, 1985).

## VIII

I would reverse the decision of the Court of

Appeals and remand this case to the Court of Appeals in order for it to consider the city's arguments it did not reach previously, including the city's argument regarding the adequacy of Electro-Tech's proof of damages, and for further proceedings consistent with this opinion.

LEVIN and CAVANAGH, JJ., concurred with BRICKLEY, J.